UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Bin Gao<br>             *Plaintiff*<br><br>    – against –<br><br>Jian Song Shi, Jian Ling Lin, Yifudi Lin<br>             *Defendants*. | **1:18-CV-02708 (ARR) (JO)**<br><br>**Not for Publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

Bin Gao ("Mr. Gao" or "Plaintiff") worked at Wong Good Hand Pull Noodles ("the restaurant") from June 2010 through March 2018. As a noodle puller, his job was to make the noodles that the restaurant served. Mr. Gao alleges that he was paid less than minimum wage and was not paid overtime, along with other labor law violations. His claims arise under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

Defendants brought a motion for summary judgment seeking to have all of Mr. Gao's claims dismissed. A minority of the claims can be resolved as a matter of law, but genuine disputes of material fact remain as to many of the core issues in this case. Thus, the defendants' motion is granted in part and denied in part as explained below.

# BACKGROUND

*Defendants*

The defendants in this action are three individuals: Yufudi Lin, ("Mr. Lin"), his daughter Jian Ling Lin, ("Ms. Lin"), and his former son-in-law, (Ms. Lin's ex-husband) Jian Song Shi ("Mr. Shi"). Shi Dep. 17:14–20, ECF No. 44-1.

Mr. Lin is the owner of Wong Good Hand Pull Noodles, located at 5924 8th Avenue, Brooklyn, NY 11220. Yifudi Lin Decl. ¶ 2, ECF No. 40. He has owned the restaurant since June 2010. *Id.* The parties disagree about what role, if any, Ms. Lin and Mr. Shi played at the restaurant.[1] Pl.'s 56.1 Resp. ¶¶ 1–2; 25–33, ECF No. 43.

Plaintiff claims that while the restaurant belonged to Mr. Lin in name, all three defendants were "the boss." Gao Dep. 25:25–26:23; 90:3–23, ECF No. 41-11. He alleges that Ms. Lin and Mr. Shi were involved in overseeing operations at the restaurant by setting schedules, paying wages, supervising employees, and firing employees. Gao Dep. 43:18–45:15; 50:16–51:20; 66:23–67:6; 67:20–68:7; 70:9–14; 73:7–25; 82:18–83:4.

Defendants claim that Mr. Lin was the sole manager at Wong Good Hand Pull Noodles. Yifudi Lin Decl. ¶¶ 2–20, ECF No. 40. Mr. Lin's declaration states, "I would

---

[1] The parties dispute many of the facts surrounding this case. Defendants are correct that plaintiff provided incomplete responses to defendant's Rule 56.1 statement. Def's. Reply 2, ECF No. 45; *see* Pl.'s 56.1 Resp. (failing to provide citations or explanations). However, plaintiff's improper response does not require the court to deem defendants' statement of facts as admitted. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement.") (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir.2000). I opt not to deem defendants' statements of facts as admitted.

handle everything at the restaurant, including opening and closing." *Id.* ¶ 23. The business is registered in his name, as are the business's bank accounts, insurance policy, and utilities bills. *Id.* ¶¶ 5–11. Mr. Gao previously filed a Worker's Compensation claim, in which he named Mr. Lin as his employer. *Id.* ¶¶ 12–14. In April 2018, after plaintiff stopped working for the restaurant, Mr. Lin became ill with brain cancer and he shifted more responsibilities to Mr. Shi. *Id.* ¶¶ 21–22.

Defendants claim that Ms. Lin has never worked at the restaurant. *Id.* ¶ 16. Mr. Lin's declaration states: "Jian Ling Lin is my daughter and she does not work at or for the restaurant. Jian Ling Lin spends her time taking care of her 3 children, she does not work." *Id.* ¶¶ 16–17.

Defendants claim that Mr. Shi works at the restaurant as an assistant/helper. *Id.* ¶¶ 19–20. According to Mr. Lin's declaration, Mr. Shi has recently played a larger role at the restaurant, but previously he did not manage day-to-day operations. *Id.* ¶¶ 21–23.

*The Plaintiff*

Mr. Gao was already employed as a noodle puller at Wong Good Hand Pull Noodles when Mr. Lin bought the restaurant in 2010. Gao Dep. 29:14–30:16. Mr. Gao continued to work at the restaurant through March 18, 2018. Pl.'s 56.1 Resp. ¶ 2. He claims he was fired on this day because he tried to take a sick day. Gao Dep. 70:9–14.

The parties disagree about Mr. Gao's working hours. Per Mr. Gao's deposition, from 2010 to 2015, he worked from 10:30am to 12am seven days a week. Gao Dep. 43:5–10; 63:3–8. After 2015, he worked from 10:30am to 11pm six days a week, and from 10:30 to 5:30 on Fridays. *Id.* 43:11–14; 74:10–24. He had no scheduled breaks, but ate lunch and

dinner during slow times at the restaurant. *Id.* 54:2–55:2. Mr. Gao claims he made approximately 300 bowls of noodles per day. Gao Dep. 34:20–36:13.

Mr. Lin's deposition states that the usual hours for employees were 10:30am to 11pm. Shi Dep. 21:25–23:6. He further stated that Mr. Gao came in to work later, between 11am and 2pm, and always left at 11pm. *Id.* 32:11–17. He said that Mr. Gao worked six days a week, and on the seventh day sometimes did not work and sometimes worked either half a day or a full day and received extra payment for his work. *Id.* 36:18–37:22. No records of Mr. Gao's work hours were kept. *Id.* 32:21–25; Gao Dep. 71:20–23.

The parties disagree about Mr. Gao's payment. Mr. Gao claims he received $3,000 cash per month for the entire period of his employment. Gao Dep. 51:6–10; 72:19–73:3; 74:25–75:4. In Mr. Shi's deposition, he states that Mr. Gao received $3,300 the first month, $3,400 starting the second month, and a year later began receiving $3,500 for the remaining months of his employment. Shi Dep. 38:2–13. Mr. Shi stated that Mr. Gao took frequent advances on his paycheck, so that he was paid several times per month. *Id.* 29:20–25. Mr. Shi says some records of payment were kept on calendars, but that the calendars have been thrown out, and no records remain. *Id.* 30:5–31:5; 39:20–40:14.

According to defendants, "Plaintiff was not a tipped employee and did not get tips." Yifudi Lin Decl. ¶ 32; *see also* Shi Dep. 39:12–13. While plaintiff's complaint and Rule 56.1 dispute this statement, plaintiff has not provided any evidence of receiving tips. Pl.'s 56.1 ¶ 15.

*The Operations of Wong Good Hand Pull Noodles Restaurant*

Wong Good Hand Pull Noodles Restaurant is a cash-only business. Shi Dep. 24:20–22.

There is a lack of clarity in the record about the number of employees at the restaurant during the relevant period. According to Mr. Gao, there were five employees at the restaurant. Gao Dep. 45:23–47:22 According to Mr. Shi, there were three employees. Shi Dep. 20:3–8. According to the business's tax returns, there were two employees. Tax Documents 59-61, ECF No. 41-4.

The parties disagree about the gross volume of sales of the restaurant. Pl.'s 56.1 ¶¶ 34–38. Defendants claim that the restaurant made less than $500,000 in sales per year. *Id.* ¶ 35. To support this statement, Defendants provided unsigned tax returns indicating gross sales of $117,825 in 2017, $115,918 in 2016, and $108,104 in 2015. Tax Documents 1–2, 33, ECF No. 41-4. These documents also indicate two employees, Mr. Gao and Mr. Shi, and that Mr. Gao's quarterly total remuneration was $1,800. *Id.* at 59–61. Mr. Lin's declaration authenticates the tax returns and states that the restaurant never made more than $500,000. Yifudi Lin Decl. ¶¶ 5, 25–30.

Mr. Gao states in his deposition that the restaurant made $2,000 to $3,000 dollars a day. Gao Dep. 55:18–23. He describes making approximately 300 bowls of noodles each day. *Id.* 34:20–36:13 He testified that the price for menu items varies from around $5 to $8. *Id.* 56:11–15. He mentions that the restaurant serves other items as well, including soup dumplings and dumplings. *Id.* 75:8–77:15. Mr. Shi testified that the restaurant also sells thin noodles, rice noodles, and ho fun. Shi Dep. 24:14–18.

*Procedural Posture*

On May 7, 2018 Mr. Gao filed suit, Compl., ECF No. 1, later amending his complaint on August 23, 2018.[2] Am. Compl., ECF No. 22. His claims are as follows: (1) failure to pay the minimum wage under the FLSA; (2) failure to pay minimum wage under NYLL; (3) failure to pay overtime under the FLSA; (4) failure to pay overtime under the NYLL; (5) failure to pay spread of hours pay under NYLL; (6) gratuities violations under NYLL; (7) violation of the time of hire wage notice requirement under NYLL; and (8) violation of the pay stub requirement under NYLL. *Id.* 12–18.

On May 3, 2019, defendants moved for summary judgment, requesting dismissal of all claims. Def. Mot., ECF No. 37. Defendants' bases for this motion are as follows: (1) Plaintiff has not demonstrated enterprise coverage under the FLSA by establishing that the business has $500,000 in yearly gross income, and because all federal claims should be dismissed, there is no basis for jurisdiction over the state claims, so those claims should also be dismissed; (2) Jian Ling Lin and Jian Song Shi should be dismissed as defendants because they are not employers; (3) The claim for gratuities violations should be dismissed because Mr. Gao was not a tipped employee; (4) The claim for minimum wage should be dismissed because Mr. Gao was paid above minimum wage; and (5) The claim for failure to provide a time of hiring statement should be dismissed because Mr. Gao was hired before the effective date of the statute. Def.'s Br., ECF No. 38.

---

[2] The complaint was originally filed as a collective action, but Mr. Gao has since withdrawn the collective action portion of the complaint and is proceeding individually. Pl. Ltr., ECF 24.

# DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When reviewing a motion for summary judgment, the court must view the evidence in the "light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and its entitlement to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the nonmovant bears the burden of proof at trial, the [defendants] may show prima facie entitlement to summary judgment . . . [by] point[ing] to evidence that negates [the plaintiff's] claim[]." *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). If the non-movant fails to present any proof that challenges the movant's evidence, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56).

## A.    Plaintiff's Coverage Under the FLSA

In order to prove a defendant's liability for minimum wage and overtime violations

under the FLSA, a plaintiff must first demonstrate that he is a "covered employee." *See Benitez v. F & V Car Wash, Inc.*, No. 11-CV-01857 (DLI)(SMG), 2012 WL 1414879, at *1 (E.D.N.Y. Apr. 24, 2012). The statute allows a plaintiff to demonstrate coverage in one of two ways: (1) by proving that the plaintiff himself "is engaged in commerce or in the production of goods for commerce," or (2) by proving that the plaintiff's employer is "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a); *accord* 29 U.S.C. § 207(a)(1). The first possible basis for employee coverage is known as "individual coverage," while the second basis is known as "enterprise coverage." *See Li v. Zhao*, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014). The statute further provides that an employer will satisfy the test for "enterprise coverage" if it: "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" and (ii) has an "annual gross volume of sales made or business done [that] is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

Though employee coverage is an essential element of an FLSA claim, federal courts have consistently held that a plaintiff's failure to demonstrate coverage under the statute does not deprive the court of subject matter jurisdiction, even if jurisdiction is premised on the FLSA claim under 28 U.S.C. § 1331. *See, e.g.*, *Zaldivar v. Anna Bella's Café, LLC*, No. 11-CV-1198 (JS)(ETB), 2012 WL 642828, at *3 (E.D.N.Y. Feb. 28, 2012) (citing cases). Instead, the question of coverage "goes to the merits of Plaintiffs' claims." *Monterossa v. Martinez Rest. Corp.*, No. 11 Civ. 3689(JMF), 2012 WL 3890212, at *3 (S.D.N.Y. Sept. 7, 2012) (quoting *Velez v. Vassallo*, 203 F. Supp. 2d 312, 332 (S.D.N.Y.

2002)); *cf. Benitez*, 2012 WL 1414879, at *1 ("[T]he question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability."). Thus, defendants are incorrect in their description of the coverage requirement as a "jurisdictional prerequisite[.]" Def.'s Br. 10. Where, as here, defendants move for summary judgment on the basis of a plaintiff's coverage under the statute, plaintiffs can survive summary judgment by demonstrating that there is a genuine dispute of material fact regarding the plaintiff's coverage. *See Monterossa*, 2012 WL 3890212, at *3 ("[I]n order to survive summary judgment, Plaintiffs need not prove that the Restaurant had gross income of more than $500,000; that would be their burden at trial. Plaintiffs need only show that there is a material dispute of fact regarding the issue.").

In this case, plaintiffs have not pled any of the elements that would give rise to individual coverage, and instead, hinge their claim on "enterprise coverage." The first prong of enterprise coverage is easily met; because it applies whenever a company's employees handle "materials" that moved in interstate commerce, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (citation omitted). Though plaintiffs have not presented specific evidence to demonstrate that they could prove this element at trial, defendants do not argue that plaintiffs would not meet this prong of the enterprise coverage test. Thus, I assume for the purposes of this motion that the restaurant is "engaged in interstate commerce."

There is a genuine dispute between the parties as to the second prong of enterprise

coverage. Defendants allege that this prong is not met because Wong Good Hand Pull Noodles makes under $500,000 in sales per year. Def.'s Br. 9–11. Plaintiffs allege the restaurant does make at least $500,000 in sales per year. Pl.'s Br. 5–7. The record contains evidence on both sides of the dispute.

Defendants point to the following evidence to support their claim: (1) Mr. Lin's declaration, ECF No. 40; (2) Defendants' Tax Document, ECF No. 41-4, and (3) Defendants' Bank Statements, ECF No. 41-5.[3] *See* Def.'s Br. 10. Mr. Lin's declaration states, "My restaurant has always made much less than $500,000 in gross annual income." Yifudi Lin Decl. ¶ 26. He also states, "Defendants' Exhibit 4 is true redacted copies of my tax returns, which include the taxes filed for the restaurant." *Id.* ¶ 5. He affirms that the amounts stated in the tax returns are correct. *Id.* ¶¶ 28–30. The tax returns provided indicate gross sales of $117,825 in 2017, $115,918 in 2016, and $108,104 in 2015. Tax Documents 1–2, 33, ECF No. 41-4.

On the other side of the dispute, Mr. Gao's deposition supports plaintiff's allegation that the restaurant makes at least $500,000 in gross sales. *See* Pl. Br. 6. Mr. Gao testified that the restaurant makes $2,000 to $3,000 in sales per day, and that the restaurant is open every day. Gao Dep. 55:18–23; 63:7–8. This would mean that the restaurant had between $730,000 and $1,095,000 in yearly sales. Mr. Gao further testified to making approximately 300 bowls of noodles each day, which sold for prices between $5 and $8.

---

[3] Defendants do not elaborate on the significance of the bank account records in establishing the gross sales of the restaurant. The records are likely of limited value given sworn testimony that the restaurant operated on a cash-only basis. Shi Dep. 24:20–22.

*Id.* 34:20–36:13. Estimating an average price of $6.50, this would mean the restaurant sells $1,950 per day, or $711,750 yearly. This estimate only accounts for hand pulled noodles, and does not account for other menu items Mr. Gao mentions, including soup dumplings and other dumplings. *Id.* 75:8–77:14.

Furthermore, plaintiff raises serious questions about the reliability of defendants' tax returns, which are heavily redacted, unsigned, and contain information inconsistent with sworn testimony. Defendants are correct that the use of tax records to compute the annual gross sales of a business is permissible. *See* Def.'s Br. 10. But the case defendants cite, *Grant v. All Star Baby Safety*, *Inc*, merely states that tax records *can* be considered in a motion for summary judgment, not that such records are dispositive. *Grant v. All Star Baby Safety*, *Inc.*, 2016 U.S. Dist. LEXIS 88851, at *4 (E.D.N.Y. July 8, 2016)). Defendants are correct that while the tax returns at issue are unsigned, they are accompanied by a signed declaration from the taxpayer, *see* Yifudi Lin Decl. ¶ 5, which ordinarily does assuage some concerns about the authenticity of the documents. *Cf. Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 348 (E.D.N.Y. 2014) ("The absence of a signature on the tax returns, combined with the absence of an affidavit . . . from the owner of the business verifying the authenticity of the returns caution against presuming their authenticity."). However, plaintiff has identified what appear to be unexplained, inaccurate statements in the documents. Pl.'s Br. 6. The New York State Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return (NYS-45), indicates that Mr. Gao's total quarterly remuneration was $1,800. Tax Documents 59–61. This is inconsistent with a monthly salary of either $3,000, as alleged

by Mr. Gao, Gao Dep. 51:6–10, or $3,500, as alleged by Mr. Shi. Shi Dep. 38:2–13. The same document also lists only two employees, Tax Documents, 59–61, which is inconsistent with both Mr. Gao's statement that there were five employees, Gao Dep. 45:23–47:22, and Mr. Shi's statement that there were three employees. Shi Dep. 20:3–8. Given these inconsistences, a reasonable fact-finder could conclude that the tax documents are unreliable and instead credit Mr. Gao's statements about the restaurant's sales.

Contrary to defendants' claims, Mr. Gao's sworn testimony regarding the restaurant's sales does constitute sufficiently "'concrete' and 'affirmative' evidence to support the conclusion that the restaurant earned more than $500,000 in sales annually." Def.'s Br. 9 (citing *Li v. Zhao*, 35 F. Supp. 3d 300, 306 (E.D.N.Y. 2014)). In *Li*, the only evidence that the employer made $500,000 in sales was an estimate by the plaintiff, a delivery driver, of the restaurant's costs based on his assumptions about other employees' salaries. *Li*, 35 F. Supp. 3d at 306. Mr. Gao is differently situated, and provides more support for his sales estimate. Mr. Gao describes the process of making 300 bowls of noodles every day, which sell for between $5 and $8, along with other dishes the restaurant sells. Gao Dep. 34:20–36:13. Defendants emphasize that "Plaintiff's only job was to pull noodles, Plaintiff did not handle the cash register at the restaurant, Plaintiff did not collect the money at the restaurant, and Plaintiff did not check the cash register each day to know how much money the restaurant made." Def.'s Reply 5, ECF No. 45 (citing Gao Dep. 31:4-20; 56:3-19). These are evidentiary issues that defendants could raise at trial, but they do

not resolve the dispute at the summary judgment phase.[4] A reasonable fact-finder could credit Mr. Gao's testimony on the basis of his experience making noodles and his knowledge of the menu.

Under similar circumstances, courts in this circuit have denied motions for summary judgment supported by tax returns where the plaintiff offers sworn testimony with contradicting evidence based on personal experience working at the restaurant. *See, e.g.*, *Rocha*, 44 F. Supp. 3d at 348; *Monterossa*, 2012 WL 3890212, at *3–4. In *Rocha*, the sworn testimony contradicting the tax returns consisted of affidavits from a dishwasher and a waiter regarding the hours of the restaurant, the number of employees, the number of tables at the restaurant, the number of meals served daily, and the average cost of meals. *Rocha*, 44 F. Supp. 3d at 349. The court concluded, "Defendants' arguments that Plaintiffs' sworn statements are not credible and their statements that the Court should determine that they are 'much more credible' underscores the disputed facts that cannot be resolved on Defendants' motion for summary judgment." *Id.* at 350. Similarly, in *Monterossa*, the court found a genuine dispute of fact where the plaintiff restaurant employees testified that the restaurant grossed between $2,000 and $5,000 a day. *Monterossa*, 2012 WL 3890212, at 4. ("Their testimony may be self-serving or otherwise inaccurate, but given that the

---

[4] Defendant further alleges that Mr. Gao's deposition admits that "far less than 300 bowls of noodles were actually sold per day." Def.'s Br. 6. Mr. Gao's testimony contains some ambiguity and suggests that on some days, the amount sold is less than 300 bowls. *See* Gao Dep. 60:12–61:19 (describing sometimes having leftover dough). But a reasonable interpretation of this testimony could be that on some days, the restaurant sells 290 or 295 bowls–a difference small enough to still meet the $500,000 threshold.

Restaurant is open 365 days a year, it would gross well over $500,000 annually even if Plaintiffs considerably overestimated the Restaurant's daily earnings.").

There is a genuine dispute as to whether Wong Good Hand Pull Noodles is an enterprise covered by the FLSA. Thus, I deny defendants' request for summary judgment on all FLSA claims.[5]

## B.    The Definition of "Employer" Under the FLSA and NYLL

"To be held liable under the FLSA, a person must be an 'employer,' which § 3(d) of the statute defines broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting 29 U.S.C. § 203(d)). In view of this "broad language," the Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–43 (2d Cir. 2008)). "[W]hether an employer-employee relationship exists for purposes of the FLSA" is thus based on "economic reality rather than technical concepts." *Barfield*, 537 F.3d at 141 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). "An individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all applicable provisions of

---

[5] Because I am not dismissing the entirety of the plaintiff's federal claims, I need not consider defendants' jurisdictional arguments. *See* Def.'s Br. 11–13.

the [FLSA].'" *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 939 (S.D.N.Y. 2013) (alteration in original) (quoting 29 C.F.R. § 791.2(a)).

In the context of individual defendants, "because the phrase 'acting directly or indirectly in the interest of an employer in relation to an employee' taken literally would support liability against any agent or employee with supervisory power over employees," the courts have cabined the broad statutory definition of employer somewhat. *Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 628–29 (S.D.N.Y. 1996) (quoting statute). The Second Circuit has instructed district courts to look to "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *RSR*, 172 F.3d at 139 (citation omitted) (quoting *Whitaker*, 366 U.S. at 33). Specifically, "the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984)). That said, "[n]o one of the four factors standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances . . . ." *Id.* (citation omitted).

The parties do not dispute that an employment relationship existed between Mr. Gao and Mr. Lin. Defendants point to significant evidence that Mr. Lin owns Wong Good Hand Pull Noodles to argue that Mr. Lin was the sole employer. *See* Def.'s Br. 14–15 (citing DBA Documents, ECF No. 41-3, Utility Bills, ECF No. 41-6; Ltr. from Insurance Co., ECF No. 41-8, Workers Compensation Decision, ECF No. 41-9.) But this evidence does

not preclude the possibility that under the economic reality test, other individuals could also have employment relationships with Mr. Gao.

For the reasons that follow, I find that genuine questions of material fact remain as to whether Ms. Lin or Mr. Shi were Mr. Gao's employers in addition to Mr. Lin. *See Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012) ("[I]ndividual employer liability is rarely suitable for summary judgment." (citing *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS)(AKT), 2011 WL 317971, at *6 (E.D.N.Y. Jan. 28, 2011))).

### 1. Ms. Lin

A reasonable finder of fact could find that Ms. Lin was Mr. Gao's employer on the basis of the facts alleged in Mr. Gao's deposition. Mr. Gao describes a meeting where Ms. Lin informed all employees of their hours. Gao Dep. 43:18–45:15. He also testified that Ms. Lin paid him and all other employees. *Id.* 66:23–67:6. He states he could report to Ms. Lin if he was sick and could not come in to work. *Id.* 67:20–68:2. He states that there was a video monitor in the restaurant, which Ms. Lin would monitor from her cell phone at home. *Id.* 82:18–83:4. Finally, Mr. Gao testified that Ms. Lin fired him. *Id.* 70:4–14. These facts, taken together, could satisfy the "economic reality" test and establish Ms. Lin as an employer for the purposes of FLSA.

Defendants provide an entirely different account of events, alleging that Ms. Lin had no role at the restaurant at all. Yifudi Lin Decl. ¶¶ 16–17. If this was true, she would, of course, not be Mr. Gao's employer under the FLSA. Because the factual dispute goes

to the heart of the issue, I deny summary judgment as to Ms. Lin's liability as an employer.

### 2. Mr. Shi

A similar analysis applies to Mr. Shi. Under the facts alleged in Mr. Gao's testimony, Mr. Shi could be an employer under the economic reality test. When the restaurant ownership changed hands, Mr. Shi asked Mr. Gao to stay on as the noodle puller and informed him that his pay would be $3,000 monthly. Gao. Dep. 50:19–51:20. Mr. Gao states he could report to Mr. Shi if he was sick and could not come in to work. *Id.* 67:20–68:2. It is true that Mr. Gao admits that Mr. Shi sometimes helped make the dough for the noodles, *id.* at 79:3–5, but this fact is not inconsistent with Mr. Shi also acting as his employer. There are fewer specific facts alleged about Mr. Shi than Ms. Lin, but Mr. Gao's overall testimony, viewed in the light most favorable to plaintiffs, could lead a reasonable fact-finder to conclude that Mr. Shi was an employer.

Additionally, Mr. Shi's own testimony seems to suggest that he was involved in paying Mr. Gao. He described the process of tracking Mr. Gao's payments, stating "[U]sually, we jot down how much money was paid to him. For example, on March 5 he received 500, so we would jot down 500 on March 5." Shi Dep. 30:2-24. This discussion appears, at least potentially, to be consistent with Mr. Gao's claims that multiple people, together, including Mr. Shi, operated as his employers.

Mr. Shi also testified that he was *not* a boss and that he was only a helper. *Id.* 10:11–13; 19:9–12. If this is true, he would not be an FLSA employer, but there is

enough evidence for a reasonable fact-finder to come to the contrary conclusion. Therefore, I deny summary judgment as to Mr. Shi's liability.

## C.   FLSA and New York Labor Law Minimum Wage

The defendants seek summary judgment on Mr. Gao's minimum wage claims under the FLSA and the NYLL on the basis of their claim that Mr. Gao was paid minimum wage. I grant summary judgment as to the years 2012–2014, because there is no genuine dispute that Mr. Gao was paid minimum wage for those years. However, I deny summary judgment as to 2015–2018 because there is a genuine dispute about whether Mr. Gao was paid minimum wage for those years.

The FLSA and the NYLL each require an employer to pay not less than a statutorily-set minimum wage for each hour of work. *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2.  Since 2009, the minimum wage under the FLSA has been $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). During the relevant period, the minimum wage under New York law has been as follows: $7.15 from 2010 until December 30, 2013; $8.00 from December 31, 2013 until December 30, 2014; $8.75 from December 31, 2014 until December 30, 2015; $9.00 from December 31, 2015 until December 30, 2016; $10.50 from December 31, 2016 through December 30, 2017; $12.00 from December 31, 2017 through March 18, 2018. NYLL § 652(1); 12 N.Y.C.R.R. § 146-1.2.

To determine whether an employee has been paid the minimum wage, a court must determine the employee's hourly rate, also called the "regular rate." "Under the FLSA, the 'regular rate' is determined by 'dividing an employee's total remuneration for employment

(except statutory exclusions) in any workweek by the total number of hours actually worked.'" *Java v. El Aguila Bar Rest. Corp.*, No. 16-CV-6691 (JLC), 2018 WL 1953186, at *10 (S.D.N.Y. Apr. 25, 2018) (quoting *Romero v. Anjdev Enters., Inc.*, No. 14-CV-457 (AT), 2017 WL 548216, at *10 (S.D.N.Y. Feb. 10, 2017)). Under NYLL, the regular rate is determined the same way for hospitality workers such as Mr. Gao. *See* 12 NYCRR § 146–3.5(b).

As noted above, the parties disagree both about Mr. Gao's working hours and about the amount he was paid. Mr. Shi and Mr. Gao provide contradicting sworn testimony on both subjects. For the purpose of defendants' motion for summary judgment, I will construe the evidence in the light most favorable to plaintiff to determine whether there is a genuine dispute of material fact as to payment of minimum wage.

Per Mr. Gao's deposition, from 2010 to 2015, he worked from 10:30am to 12am seven days a week. Gao Dep. 43:5–10; 63:3–8. After 2015, he worked from 10:30am to 11pm six days a week, and from 10:30 to 5:30 on Fridays. *Id.* 43:11–14; 74:10–24. He had no scheduled breaks, but ate lunch and dinner during slow times at the restaurant. *Id.* 54:2–55:2. Mr. Gao claims he received $3,000 cash per month for the entire period of his employment. Gao Dep. 51:6 – 10; 72:19–73:3; 74:25–75:4.

Based on this testimony, for the period from 2010 through 2015, Mr. Gao's alleged regular rate of pay was approximately $7.32.[6] For the period from 2015 through 2018, Mr.

---

[6] I arrived at this number, first, by determining that Mr. Gao's alleged monthly pay of $3,000 is the equivalent of $692.30 per week. Next, I determined that Mr. Gao alleges he

Gao's alleged regular rate of pay was approximately $8.44.[7] Based on this calculation, there is no dispute that Mr. Gao was paid minimum wage from the beginning of his employment through December 30, 2013, because his alleged rate of pay, $7.32, surpassed the statutory minimum of $7.15. However, for the remaining period from December 31, 2014 through March 18, 2018, Mr. Gao does allege that he was paid below minimum wage.[8]

Summary judgment is granted as to minimum wage claims for the period before December 30, 2013. Summary judgment is denied as to minimum wage claims from the period of December 31, 2013 through March 18, 2018.

## D. New York Labor Law Gratuities

New York Labor Law § 196-d ("Gratuities") provides "No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

Plaintiff's amended complaint alleges a cause of action under § 196-d, and states,

---

worked for 94.5 hours each week during this period. I then divided the $692.30 by 94.5, which is $7.32.

[7] Mr. Gao alleges he worked 82 hours each week during this period. $692.30 divided by 80 is $8.44.

[8] Defendants note that plaintiff's counsel's calculations appear to indicate that Mr. Gao was paid $17.31 per hour. Def.'s Br. 16 (citing Plaintiff's Damage Calculations, ECF No. 41-10). This calculation does raise an evidentiary question, but it is not conclusive such that summary judgment could be granted, where plaintiff's sworn testimony supports a different calculation. Plaintiff's counsel revised his calculation in his pre-motion letter. *See* ECF No. 33.

"At all relevant times, Defendants maintained a policy and practice of unlawfully retaining tips received by Plaintiff, which amounted to $10 daily on average, in violation of federal and state laws." Am. Compl. ¶ 24, *see also id.* ¶¶ 102–107. Plaintiff has not provided any evidence to support this claim. The only relevant evidence in the record states that Mr. Gao did *not* receive gratuities. *See* Yifudi Lin Decl. ¶ 32; Shi Dep. 39:12–13. Because plaintiffs have failed to provide any evidence that Mr. Gao received gratuities, or that gratuities intended for him were withheld, summary judgement is granted to defendants as to this claim.

### E.    New York Labor Law Wage Notices

New York Labor Law imposes certain notice requirements on employers. One such requirement is that each employer "provide his or her employees . . . , at the time of hiring, a notice containing" certain information, including the employee's "rate or rates of pay and basis thereof." N.Y. Lab. Law § 195(1)(a) (2014). A previous version of this statute, which was enacted on April 9, 2011, also required this notice to be provided to employees "on or before February first of each subsequent year of the employee's employment with the employer." N.Y. Lab. Law § 195(1)(a) (2011). At all relevant times, the law explicitly granted a private cause of action to "any employee" who did not receive the required notice "within ten business days of his or her first day of employment." § 198(1-b). It also stated that the Commissioner of Labor could bring an action "[o]n behalf of any employee not provided [the] notice as required." *Id.*

Plaintiffs allege that the defendants failed to provide Mr. Gao with the required notice. Am. Compl. ¶¶ 90–94. Defendants seek summary judgment and dismissal of this claim because Mr. Gao was employed in 2010, before the relevant statute went into effect. Def's. Br. 17–21.

Defendants are correct that this claim fails as a matter of law. First, because the 2011 statute "is not retroactive" (*Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 144 (2d Cir. 2013)), "[a]n employee who began working before April 2011 would not have been required to receive [a] notice of his wages within ten business days of his or her first day of employment." *Severino v. 436 W. L.L.C.*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015). Although at least one court has concluded that "any employee whose wage rate *changed* at any point after April 9, 2011, could maintain a cause of action," I need not reach that issue "[b]ecause [Mr. Gao] began his employment prior to April 9, 2011, *and* his wage rate did not subsequently change." *Id.* (second emphasis added) (citing *Cuzco v. F & J Steaks 37th St. LLC*, No. 13cv1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014)). Thus, Mr. Gao has no claim for lack of a wage notice "at the time of hiring" (N.Y. Lab. Law § 195(1)(a) (2014)).

Nor can Mr. Gao recover for the defendants' failure to provide him with a wage notice "on or before February first of each subsequent year" (N.Y. Lab. Law § 195(1)(a) (2011)). "[T]he plain language of the statute . . . confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year." *Carter v. Tuttnauer U.S.A. Co.*, 78 F. Supp. 3d 564, 570 (E.D.N.Y. 2015) (quoting *Lin v. Benihana N.Y. Corp.*, No. 10 Civ.

1335(RA)(JCF), 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012)). As a result, "even if Plaintiffs did not receive annual wage notices on, for example, February 1, 2013, they cannot recover damages for that violation of Section 195(1)." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 510 n.13 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

Therefore, defendants' motion for summary judgment is granted as to Count VII of plaintiff's amended complaint.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is denied in part and granted in part. Specifically, the defendants are granted summary judgment on the issues of liability to Mr. Gao for (1) unpaid minimum wage prior to December 31, 2013, (2) violations of the New York Labor Law's gratuities requirements, and (3) violations of the New York Labor Law's time of hire wage notice requirement. In all other respects, the defendants' motion for summary judgment is denied.

So ordered.

_____/s/_____

Allyne R. Ross

United States District Judge


Dated:       August 20, 2019

             Brooklyn, New York