UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BIN GAO,

                  Plaintiff,               **REPORT AND RECOMMENDATION**
                                            **18 CV 2708 (ARR)(LB)**

     -against-

JIAN SONG SHI and JIAN LING LIN,

                  Defendants.
-------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq., and the New York Labor Law ("NYLL"), N.Y. LAB. LAW § 190 et. seq., alleging that defendants failed to pay him minimum wage, to provide overtime wages, to provide spread-of-hours pay, and to provide required wage statements. Second Am. Compl. ("SAC") ¶¶ 1-6, ECF No. 22. This case was vigorously litigated until defendants, despite attempts to contact them, ceased communicating with counsel in 2020. Brand Dec. ¶ 3, ECF No. 48. The Court then granted plaintiff leave to apply for an entry of default, ECF No. 68, and the Clerk of Court noted defendants' default, ECF No. 72. Plaintiff now moves for a default judgment. ECF No. 73. The Honorable Allyne Ross referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion for a default judgment should be granted.

# BACKGROUND[1]

The Court assumes the reader's familiarity with the facts and history of this case, and references Judge Ross' opinion granting in part and denying in part defendants' motion for summary judgment. Summary judgment was granted to defendants on the issues of "(1) unpaid minimum wage prior to December 31, 2013, (2) violations of the New York Labor Law's gratuities requirements, and (3) violations of the New York Labor Law's time of hire wage notice requirement." Summ. J. Op. & Order 23. Summ. J. Op. & Order 23, ECF No. 46.

## A. THE PARTIES

Plaintiff Bin Gao worked as a hand pull noodle cook at Wong Good Hand Pull Noodle Restaurant in Brooklyn, New York from approximately June 2010 until March 19, 2018. SAC ¶ 4. Plaintiff alleges that the restaurant was owned by defendant Yifudi Lin (now deceased) or was a partnership operated jointly by the named defendants. Id. ¶ 5. Plaintiff alleges the restaurant's sales exceeded $500,000 a year and it was engaged in interstate commerce because it "provided services [and] purchased and handled goods moved in interstate commerce." Id. ¶¶ 6-7. Plaintiff thus alleges that the restaurant meets FLSA's definition of an "enterprise" and that plaintiff's work was essential to the business. Id. ¶¶ 8-9.

Defendant Jian Song Shi was an owner and manager of the restaurant and participated in its day-to day operations. Id. ¶ 10. Plaintiff knew him as "Boss." Id. ¶ 11. Defendant Shi "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules

---

[1] The facts are drawn from the allegations in plaintiff's second amended complaint, documents incorporated by reference, and other uncontested evidence in the record. The allegations in the complaint are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records." Id. Similarly, defendant Jian Ling Lin[2] was an owner and manager of the restaurant, participated in its day-to day operations, "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records." Id. ¶¶ 12-13. Plaintiff knew her as "Lady Boss." Id. ¶ 13. Defendant Yifudi Lin was an owner and manager of the restaurant, participated in its daily operations, and determined employee rates of pay, work schedules, and employment. Id. ¶¶ 14-15. Plaintiff alleges the defendants knowingly and willfully did not pay plaintiff minimum wage, overtime wages, spread of hours pay, and failed to provide time of payment wage notices. Id. ¶ 16.

**B. JUNE 2010 THROUGH JUNE 2015**

Between June 2010 and June 2015, plaintiff worked seven days a week from 10:30 a.m. to 12:00 a.m.[3] Id. ¶ 27; Gao Dep. 43:5-10; 63:3-8. Plaintiff did not have a lunch break and was required to be on call during his work hours. Compl. ¶ 27. He worked approximately 94.5 hours per week and his responsibilities included "kneading dough, pulling noodles by hand, and preparing noodles." Id. ¶¶ 28-29. Instead of receiving minimum wage for all hours worked, plaintiff was paid a fixed rate of $3,000 in cash once per month. Id. ¶¶ 30-32. He never received overtime pay for each hour he worked over 40 hours each week. Id. ¶ 33. He also never received spread of hours pay, or one additional hour of pay at the minimum hourly rate, when he worked over ten hours in one day. Id. ¶ 34. Defendants never provided plaintiff with written wage

---

[2] The Court will refer to defendant Jian Ling Lin by her full name to avoid any confusion with her deceased father, defendant Yifudi Lin.

[3] The Court previously granted defendants' motion for summary judgment as to any unpaid minimum wage claim for work prior to December 31, 2013. Summ. J. Op. & Order 23, ECF No. 46.

notices and statements and plaintiff was not required to record his own hours or use a time tracking device. Id. ¶¶ 37.

### C. JULY 2015 THROUGH MARCH 19, 2018

Between July 2015 and March 19, 2018, plaintiff worked seven days a week. Id. ¶ 39. He worked twelve- and one-half hours, from 10:30 a.m. to 11:00 p.m., six days a week and on the remaining day, Friday, he worked five (sic) hours, from 12:00 p.m. to 6:00 p.m.[4] Id. During these shifts, although he was permitted to eat in the restaurant's kitchen, he did not receive a meal break and was always on call. Id. In total, he worked approximately eighty hours each week. Id. ¶ 41.

Plaintiff received only $3,000 once per month, regardless of the total amount of hours he worked. Id. ¶ 42. He was never paid overtime and did not receive spread of hours pay. Id. ¶¶ 44-45. Defendants did not require plaintiff to record the hours he worked and never provided time of payment wage notices. Id. ¶¶ 47-48. Plaintiff alleges that defendants' failure to pay proper wages was knowing, intentional, and willful. Id. ¶ 49.

### PROCEDURAL HISTORY

Plaintiff commenced this action on May 7, 2018, ECF No. 1, and filed an amended complaint on June 11, 2018, First Am. Compl. ("FAC"), ECF No. 9. Defendants answered the amended complaint on July 2, 2018.[5] Ans., ECF No. 13. Plaintiff filed a second amended

---

[4] The Court notes that 12:00 p.m. to 6:00 p.m. is six hours, not five hours as plaintiff states in the SAC.
[5] The first amended complaint named defendants ABC Corp., d/b/a Wong Good Hand Pull Noodles, Jian Song Shi, Jian Ling Lin, and Yifudi Lin, however, only the individual defendants answered. Plaintiff's counsel subsequently acknowledged that the first amended complaint did not state factual allegations to support claims against the corporation and the then presiding Magistrate Judge, Judge Orenstein, ordered counsel to file a second amended complaint. ECF No. 20.

complaint ("SAC") on August 23, 2018 removing defendant ABC Corp., which had been named in the two prior complaints.[6] SAC, ECF No. 22. Magistrate Judge Orenstein then shepherded the case through discovery and held a settlement conference. ECF Nos. 21, 29-30. At the close of discovery, defendants announced their intention to file a motion for summary judgment. ECF No. 31. On August 20, 2019, the Court granted in part and denied in part defendants' motion for summary judgment.  Summ. J. Op. & Order. As previously mentioned, the motion was granted on the issues of liability for unpaid minimum wages prior to December 31, 2013, violations of NYLL's gratuities provisions, and violations of NYLL's time of hire wage notice requirements. Id. at 23. The motion was denied as to all other claims. Id.

On December 2, 2019, defendants' counsel filed a suggestion of death on the record, stating that defendant Yifudi Lin had passed away. ECF No. 56. The Court directed plaintiff to file a motion for substitution as required by Federal Rule of Civil Procedure 25(a), however, plaintiff never sought substitution and the case was dismissed against defendant Yifudi Lin. ECF No. 58; Electronic Order dated April 6, 2020. Defendants' counsel later informed the Court that he had "not communicated with his [remaining] clients in a number of months, and he…made multiple unsuccessful attempts to make contact with" them. Electronic Order dated Sept. 30, 2020. Plaintiff stated his intention to seek a default judgment, ECF No. 59, and the Court directed defendants' counsel to respond, see Electronic Order dated Oct. 13, 2020. Defendants' counsel stated he opposed a default judgment, ECF No. 60, but later moved to withdraw as counsel for defendants,[7] ECF Nos. 61-62. The Court denied defendants' counsel's motion to

---

[6] The complaint was brought as a purported collective action, but plaintiff later withdrew that portion of the complaint and proceeds only on his individual claims. ECF No. 24.

[7] Defendants' counsel had previously moved to withdraw citing defendants' desire to terminate representation, ECF Nos. 47-48, but that motion was denied, see Electronic Order dated Oct. 28, 2019.

withdraw, citing the risk of prejudice to defendants if they wished to resume contact with counsel and litigate this case. <u>See</u> Electronic Order dated Oct. 27, 2020.

Given the stage of this litigation, the Court directed the parties to brief the issue of whether defendants' default should be entered. <u>See</u> Electronic Order dated Oct. 30, 2020. After reviewing the parties' submissions, ECF Nos. 65-67, the Court granted plaintiff leave to seek entry of the defendants' default, ECF No. 68.[8] The Clerk of Court then noted defendants Jian Ling Lin and Jian Song Shi's default, ECF No. 72, and plaintiff filed the instant motion for a default judgment, ECF No. 73-75. In support of his motion, plaintiff provides the following: plaintiff's counsel's affirmation (ECF No. 74); the First Amended Complaint[9] (ECF No. 74-1); plaintiff's deposition transcript ("Gao Dep.," ECF No. 74-2); defendant Yifudi Lin's deposition transcript ("Yifudi Lin Dep.," ECF No. 74-3); an Affidavit of Service regarding Jian Song Shi (ECF No. 74-4); an Affidavit of Due Diligence regarding Jian Ling Lin (ECF No. 74-5); a Certificate of Default[10] (ECF No. 74-6); plaintiff's damages calculations (ECF No. 74-7); plaintiff's counsel's time and billing records (ECF Nos. 74-8, 76); a proposed order (ECF No. 74-9); and a Memorandum of Law ("Pl.'s Mot.") (ECF No. 75).

---

[8] In its Opinion and Order, the Court noted that defendants would "be free to 'move before the district court to be relieved of [their] default'" and the Court " 'may set aside an entry of default for good cause.' " ECF No. 68, at 6 n.3 (quoting <u>City of New York v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 128 (2d Cir. 2011)).

[9] Plaintiff attaches the First Amended Complaint, filed on June 11, 2018, to his motion for a default judgment as Exhibit 1, however, a second amended complaint, terminating ABC Corp. as a defendant, was filed August 23, 2018. At summary judgment, the SAC was the operative pleading. Summ. J. Op. & Order 6. The Court thus considers plaintiff's SAC to adjudicate the instant motion for a default judgment.

[10] The caption on the Certificate of Default still contains the names of dismissed defendants Yifudi Lin and ABC Corp. ECF No. 74-6.

## DISCUSSION

### I. Personal Jurisdiction and Service of Process

The Court first addresses the issues of personal jurisdiction and service of process, both of which are prerequisites to the entry of a default judgment. See Sheldon v. Plot Commerce, No. 15-CV-5885(CBA)(CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016) Report and Recommendation adopted by 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). The defense of insufficient service was raised in defendants' answer, Ans. ¶¶ 135-38, ECF No. 13, and plaintiff addresses the issue in the instant motion for a default judgment, Pl.'s Mot. 3-4.

Defendants must promptly raise the issue of lack of jurisdiction based on insufficient service of process, either in an answer or a motion, or risk waiver. See Ahern v. Neve, 285 F. Supp. 2d 317, 320-21 (E.D.N.Y. 2003) (citing Santos v. State Farm Fire and Cas. Co., 902 F.2d 1092, 1095 (2d Cir. 1990)). However, even in cases where insufficient service is raised in an answer, it may still be waived when a defendant fails to challenge service by motion. Id. (quoting Caruolo v. A C and S, Inc., No. 93-Civ-3752(RWS), 1998 WL 633684, at *3 (S.D.N.Y. Sept. 15, 1998)). The passage of time and missed opportunities to raise the defense are especially probative. Id. A defendant who raises a defense in an answer but then fails to promptly act may properly be found to have waived the defense. City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 134 (2d Cir. 2011) (citing Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60-62 (2d Cir. 1999); see also Ahern, 285 F. Supp. 2d at 321 (discussing the passage of more than two years and a failure to raise the issue of insufficient service in a motion for summary judgment).

Here, any defect in the service of process does not bar the Court's exercise of jurisdiction over defendants. Defendant Jian Song Shi was served with the summons and complaint on May 24, 2018. ECF No. 10. Although the docket does not reflect service on defendant Jian Ling Lin,

plaintiff's motion papers include an "Affidavit of Due Diligence" reflecting an attempt to serve Jian Ling Lin by leaving service with defendant Jian Song Shi. ECF No. 74-5. Both defendants answered the first amended complaint and their answer sets forth the affirmative defense of "Deficient Service of Process," Ans. ¶¶ 135-38, ECF No. 13. However, prior to their default, the defendants actively litigated this case, including at the summary judgment stage, see Defs.' Mot. Summ. J., ECF No. 38, and never again raised the issue of improper service. Defendant Jian Ling Lin attended her deposition and appeared before Judge Orenstein for a settlement conference. Qu Aff. ¶¶ 32-33. The defendants' participation in this litigation for several years, and their failure to move to dismiss for improper service, constitutes a waiver of any service-related defense. See Mickalis Pawn Shop, LLC, 645 F.3d at 134; Ahern, 285 F. Supp. 2d at 321.

## II. Legal Standard for a Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). The Second Circuit recognizes a broad definition of the phrase "otherwise defend" and has found it to include a party's failure to continue its participation in a case. Mickalis Pawn Shop, LLC, 645 F.3d at 130-31 (finding that the term "otherwise defend" permits entry of default even after a defendant has answered the complaint). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (internal quotation marks and citation omitted). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). "When a defendant defaults in an action brough under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunwan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y.

2012) (citing Chun Ji Yin v. Kim, No. 07-CV-1236(DLI)(JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008)).

### III. Liability

As defendants' motion for summary judgment was granted in part, the Court will only consider those claims that survived.[11]

### A. Plaintiff Meets the Requirements for Protection Under FLSA and NYLL

### 1. FLSA

In general, FLSA requires that employers pay employees a minimum wage and provide overtime pay. See Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010). A plaintiff asserting a claim under FLSA must demonstrate that he is an "employee," as defined by FLSA, of "an enterprise engaged in commerce." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015) (citing 29 U.S.C. §§ 206(a), 207(a)); Padilla v. Manlapaz, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). This type of coverage is known as "enterprise coverage" and is separate from "individual coverage," an alternate route for invoking FLSA's protections. Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009). FLSA defines an employee as "any individual employed by an employer." Fermin, 93 F. Supp. 3d at 32 (citing 29 U.S.C. § 203(e)(1)). The statute contains several exceptions which exclude certain employees from coverage, however, these exceptions do not include ordinary restaurant

---

[11] Plaintiff's motion for a default judgment contains internal inconsistencies. It states that "plaintiff withdraws his cause of action for wage notice violation (Count VII), FLSA minimum wage violation (Count I). The cause of action for gratuities violation (Count VI) was previously dismissed by the Court," Pls. Mot. 1 n.1, however, the cause of action for time of hire wage notice violations was dismissed by the Court along with the cause of action for gratuities violation. Summ. J. Op. & Order 23. Despite the fact that plaintiff says he "withdraws his cause of action…FLSA minimum wage violation (Count I)," his motion still seeks judgment on that issue. The Court will only consider that portion of Count I that survived summary judgment.

workers like "kitchen helper/food preparer [and] cook." Id. (citing Garcia v. Pancho Villa's of Huntington Vill., Inc., No. 09-Civ-486(ETB), 2011 WL 1431978, at *3-4 (E.D.N.Y. Apr. 14, 2011)).

Under FLSA, a business is "an enterprise engaged in commerce" when it "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce…[and has] gross volume of sales made or business done…not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); see also Padilla, 643 F. Supp. 2d at 300. In this context, commerce means interstate commerce. 29 U.S.C. § 203(b).

Here, plaintiff's allegations demonstrate that he is entitled to protection under the FLSA. Plaintiff's SAC alleges that he worked as a hand pull noodle cook at defendants' restaurant, SAC ¶ 4, establishing his status as an employee as that term is defined by FLSA. See Fermin, 93 F. Supp. 3d at 32. He also states that the restaurant was "a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year…[and] provided services [and] purchased and handled goods moved in interstate commerce." SAC ¶ 6. Although these allegations appear to simply recite the statutory requirements for a business to be considered an "enterprise engaged in commerce" under FLSA, such language is sufficient and in the present context permits the logical inference that the statutory requirements are met. See Nam v. Ichiba Inc., No. 19-CV-1222(KAM), 2021 WL 878743, at *5 (citing Fermin, 93 F. Supp. 3d at 33, 33 n.3) (finding it reasonable to infer that the goods necessary to operate a restaurant with $500,000 in sales must have traveled in interstate commerce); but see Gunawan, 897 F. Supp. 2d at 85-86 (refusing to infer the required connection to interstate commerce simply because a restaurant has sales exceeding $500,000).

**2. NYLL**

The NYLL is New York's analogue to FLSA, see D'Arpa v. Runway Towing Corp., No. 12-CV-1120(JG), 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) (quoting Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)), and provides minimum and overtime wage protections along with other protections for employees, N. Y. LAB. LAW § 652. The definitions for "employee" and "employer" under the NYLL are similar to those under FLSA. Lopic v. Mookyodong Yoojung Nakjie, Inc., No. 16-CV-4179(KAM)(CLP), 2017 WL 10845064, at *5 (E.D.N.Y. 2017) (citing N. Y. LAB. LAW §§ 2, 651)). However, the NYLL's protections are not limited by any level of gross sales or nexus to interstate commerce. Nam, 2021 WL 878743, at *4, Lopic, 2017 WL 10845064, at *5 (citing Garcia v. Badyna, No. 13-CV-4021(RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014)). In considering whether an individual is an employee under the NYLL, courts look to whether a worker: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Fermin, 93 F. Supp. 3d at 34 (internal quotation marks omitted) (quoting Byong v. Cipriani Group, Inc., 1 N.Y.3d 193, 198 (2003)).

Plaintiff is an employee under the NYLL. As alleged in the complaint, he worked scheduled shifts at the restaurant on specified days and was on the restaurant's payroll, receiving $3,000 once per month. Compl. ¶¶ 23, 26, 35, 38. These facts establish his status as an employee. Fermin, 93 F. Supp. 3d at 34 (finding allegations of fixed hours, schedules, and rates of pay sufficient to prove plaintiffs' status as employees under NYLL).

**B. Defendants were Plaintiff's Employers Under Both FLSA and NYLL**

**1. FLSA**

The FLSA defines the term employer to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee." Irizarry v. Catsimatidis, 722 F.3d 99, 103 (2d Cir. 2013) (internal quotation marks omitted) (quoting 29 U.S.C. § 203(d)). A determination of whether a person or entity is an employer within the meaning of FLSA is "'grounded in economic reality rather than technical concepts.'" Id. (internal quotation marks omitted) (quoting Barfield v. N.Y.C. Health & Hosp. Corp., 537 F.3d 132, 141 (2d Cir. 2008)). The Second Circuit instructs that Courts must look to the following four factors when evaluating an alleged employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (internal quotation marks omitted) (quoting Barfield, 537 F.3d at 142). Courts should look to the "totality of the circumstances, and no individual factor is dispositive." Nam, 2021 WL 878743, at *4.

Plaintiff alleges that both defendants Jian Song Shi and Jian Ling Lin were his employers. SAC ¶¶ 10-13, 60. The SAC states that both Jian Song Shi and Jian Ling Lin "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records."[12] Id. ¶¶ 10-13. These allegations are just verbatim assertions of the factors articulated by the Second Circuit and, without more, the Court could not find that they adequately allege that defendants were plaintiff's employers. See Jian Ping Lin v. Monda

---

[12] In fact, plaintiff testified at his deposition that Jian Ling Lin was the person who fired him. Gao Dep. 70:9-19.

Window & Door Sys. Inc., No. 17-CV-3737(MKB)(RER), 2018 WL 4403384, at *4 (E.D.N.Y.

Aug. 7, 2018) (finding that a "formulaic recitation" of the Second Circuit's factors is insufficient

to support a cause of action) Report and Recommendation approved by 2018 WL 4388450

(E.D.N.Y. Sept. 14, 2018). Were plaintiff to move for a default judgment on the basis of the

allegations in his SAC alone, the Court might deny the motion. See id. In the context of an

application for a default judgment, some Courts note that when the complaint itself is

insufficient, plaintiffs may not rely on post default submissions to cure their defective complaint.

See, e.g., Perez v. 50 Food Corp., No. 17-CV-7837(AT)(BCM), 2019 WL 7403983, at *4

(S.D.N.Y. Dec. 4, 2019) (citing United States ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl.

Universal Servs., Inc., No. 11-CV-730(CS), 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 4, 2014))

("If the well-pleaded factual allegations in the complaint fail to state a claim upon which relief

can be granted, no damages can be awarded, even if the post-default inquest submissions supply

the missing information.") Report and Recommendation adopted by 2020 WL 30344 (S.D.N.Y.

Jan. 2, 2020); J & J Sports Prod., Inc. v. Abdelraouf, No. 18-CV-2547(ARR)(VMS), 2019 WL

457719, at *4 (E.D.N.Y. Feb. 5, 2019) ("Plaintiff's assertion that a court may consider

documents outside of the pleadings when evaluating a defendant's liability on a motion for

default judgment is plainly contradicted by black-letter law."). Although reiterating that a default

judgment must be supported by the presumed truthful allegations in a complaint, the Second

Circuit acknowledges that the factual allegations in a complaint, "combined with uncontroverted

documentary evidence submitted by plaintiffs," may establish liability. Bricklayers & Allied

Craftworkers Local 2, Albany N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779

F.3d 182, 189 (2d Cir. 2015). However, the current posture of this case, where defendant

defaulted after summary judgment, differentiates this case from those cited above.

At least one other Court in this District has considered a motion for a default judgment in a FLSA case post-summary judgment. See Gunawan, 897 F. Supp. 2d at 86. In Gunawan, the Court raised the insufficiency of the allegations in the complaint to support defendant's connection to interstate commerce for the purposes of the FLSA. Id. at 85-86 ("I believe that inferring an interstate commerce nexus from nothing more than the general description of an employer's business – however likely the conclusion may seem – is in tension with the presumption against default."). However, the Gunawan Court concluded that under the unusual circumstances of that case, where default occurred after defendants had the opportunity to challenge the complaint's sufficiency, the record supported a finding of liability. Id. at 86. The Court noted that the defendant business did not seek summary judgment on the issue of whether it was an enterprise – the ground on which the Court believed the complaint was insufficient – and did not deny the facts supporting that assertion. Id. The Court found that the defendant restaurant "forfeited any contention" that plaintiff was not entitled to FLSA's protections. Id.

Here, the Court considers the full record, not just plaintiff's complaint, to determine the instant motion, including the parties' depositions and other materials submitted in support of plaintiff's motion for a default judgment. Defendants never moved to dismiss the complaint for failure to state a claim or challenged the sufficiency of the complaint's allegations. At summary judgment, although defendants challenged plaintiff's assertion that they were his employers within the meaning of FLSA, Defs.' Mot. Summ. J. 13-15; ECF No. 38, the Court denied summary judgment on this issue. Summ. J. Op. & Order 16. Defendants zealously litigated this case for several years before ceasing communication with their counsel. Limiting plaintiff to the allegations in the complaint under such circumstances would threaten the orderly determination of cases. It would send the wrong message to defendants: litigate a case through summary

judgment and, if the Court does not grant full relief, default to forestall or avoid entry of a judgment. This is of special concern in the context of FLSA cases where Courts are keenly aware of the unequal power dynamic between the parties. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 202 (2d Cir. 2015)) (citing Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706 (1945) (recognizing that FLSA's purpose was to counter the unequal bargaining power between employers and employees).

The transcript from Plaintiff Gao's deposition sets forth additional facts, not present in the SAC, which establish defendants' status as his employers. Regarding defendant Jian Ling Lin, plaintiff testified that she: set his schedule, Gao Dep. 48:15-21; was the only person who paid him and other employees, id. 66:23-67:6; was the person he reported to when he was sick and could not come to work, id. 67:23-68:2; would advance him his salary if he needed money before his normal pay day, id. 73:7-74:9; and was the person who fired him, id. 70:9-14. Plaintiff stated that defendant Jian Song Shi, along with defendant Yifudi Lin, asked him to continue working at the restaurant once they acquired it, id. 50:16-22, and defendant Shi was the person who specifically told plaintiff his salary would be $3,000 a month, id. 51:6-20. Defendant Shi and defendant Jian Ling Lin also told plaintiff about a change in normal work hours. Id. 43:18-24. These allegations demonstrate that defendant Jian Ling Lin had the power to hire and fire employees, supervised employee work schedules, and was involved in the method used to pay employees. The allegations also show that defendant Shi had the power to hire employees, determined employees' rates of pay, and controlled employee schedules. Several of the factors stated by the Second Circuit are satisfied by plaintiff's allegations and they are sufficient to establish defendants' status as plaintiff's employers. See Nam, 2021 WL 878743, at *4; Lopic, 2017 WL 10845064, at *4 (citing Guardado v. 13 Wall St., Inc., No. 15-CV-2482(DRH)(SIL),

2016 WL 7480358, at *3 (E.D.N.Y. Dec. 2, 2016), <u>Report and Recommendation</u> <u>adopted by</u> 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)). Further, plaintiff's allegations demonstrate that the "economic reality" of the relationship between plaintiff and defendants was that of employee and employers. See <u>Irizarry</u>, 722 F.3d at 104 (citing <u>Barfield</u>, 537 F.3d at 141).

**2. NYLL**

The NYLL and FLSA definitions of "employer" are coextensive. <u>Fermin</u>, 93 F.Supp.3d at 3 (quoting <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011)). A finding that an individual defendant is an employer under FLSA determines that she is an employer under NYLL. <u>Id.</u> (citing <u>Apple v. Atlantic Yards Dev. Co., LLC</u>, No. 11 Civ. 5550(JG), 2014 WL 5450030, at *6-9 (E.D.N.Y. Oct 27, 2014)). Therefore, defendants Shi and Jian Ling Lin are plaintiff's employers under the NYLL. <u>Id.</u>

**3. Defendants are Jointly and Severally Liable**

Where defendants "were jointly Plaintiff['s] employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiff['s] favor." <u>Id.</u> (citing <u>Pineda v. Masonry Constr., Inc.</u>, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011)). Here, plaintiff's allegations support a finding that both defendants were his employer and therefore the defendants are jointly and severally liable for any damages award. <u>Nam</u>, 2021 WL 878743, at *6 (citing <u>Lemache v. Tunnel Taxi Mgmt., LLC</u>, 354 F. Supp. 3d 149, 153 (E.D.N.Y. 2019)).

**C. Liability for Unpaid Wages**

**1. Minimum and Overtime Wages**

The federal minimum wage, at all relevant times, has been $7.25 under FLSA. See 29 U.S.C. § 206(a)(1). The minimum wage in New York and New York City changed multiple times during the relevant time period as follows: $8.00 per hour on and after December 31, 2013; $8.75 per hour on and after December 31, 2014; $9.00 per hour on and after December 31, 2015; $10.50 per hour on and after December 31, 2016; $12.00 per hour on and after December 31, 2017.[13] N.Y. Lab. Law § 652(1). Under both FLSA and NYLL, all hours worked in excess of forty hours per week must be compensated at the overtime rate of one- and one-half times the regular rate of pay. Fermin, 93 F. Supp. 3d at 43.

Plaintiff's SAC states that at "[a]ll relevant times, Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned minimum wages…." SAC ¶ 16. The SAC more specifically alleges that through June 2015 he "was not compensated at the rate of the minimum wage." Id. ¶ 32. These allegations are sufficient to state a claim for failure to pay minimum wage under FLSA and NYLL and establish defendants' liability. Martinez v. Alimentos Saludables Corp., No-CV-1997(DLI)(CLP), 2017 WL 5033650, at * 10 (E.D.N.Y. Sept. 22, 2017).

Plaintiff also alleges that defendants failed to pay him proper overtime wages under both FLSA and New York law, which require overtime payment to equal one and one-half times an employee's regular rate of pay. See 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 142-2.2.; see also Nam, 2021 WL 878743, at *4. The SAC states that, until July 2015, defendant worked 94.5 hours per week but never received "at least one-and-one half of the minimum wage or his calculated regular rate…for all hours worked above forty (40) in each workweek." SAC ¶¶ 28, 33. Plaintiff

---

[13] The record establishes that defendants employed ten or less employees. Therefore, N.Y. Lab. Law § 652(1)(a)(ii) which governs small employers, establishes the minimum wage due to plaintiff.

further alleges that from July 2015 through March 2018 he worked "around eighty (80) hours each week" but never received "at least one-and-one half of the minimum wage or his calculated regular rate…for all hours worked above forty (40) in each workweek." Id. ¶¶ 40, 44. These allegations are sufficient to establish a defendant employer's liability for failure to pay overtime wages under FLSA and the NYLL. Nam, 2021 WL 878743, at *4 (citing Leon v. Zita Chen, No. 16-CV-480(KAM)(PK), 2017 WL 1184149, at *7 (E.D.N.Y. Mar. 29, 2017)); Lopic, 2017 WL 10845064, at *6 (citing Guardado, 2016 WL 7480358, at *7).

**2. Spread of Hours Pay as Required by New York Law**

Under New York law, "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a). In the context of a motion for a default judgment, an allegation that a plaintiff worked over 10 hours a day but did not receive an extra hour of pay sufficiently establishes an employer's liability. See Zhen Ming Chen v. Y Café Ave. B. Inc., No. 18-CV-4193(JPO), 2019 WL 2324567, at *3 (S.D.N.Y. May 30, 2019).

Here, plaintiff alleges that he did not receive "spread of hours" pay at any time during his employment although he often worked in excess of ten hours a day. SAC ¶¶ 27, 34, 39, 45. These allegations establish defendants' liability for failure to provide "spread of hours" pay. See Zokirzoda v. Acri Café Inc., No. 18-CV-11630(JPO), 2020 WL 359908, at *2 (S.D.N.Y. Jan 22, 2020).

**D. New York Law's Wage Statement Requirement**

New York law requires that employers provide employees with a wage statement documenting certain specified information at the time wages are paid. N.Y. LAB. LAW § 195(3);

see also Piedra v. Ecua Rest., Inc., No. 17-CV-3316(PKC)(CLP), 2018 WL 1136039, at *14-15

(E.D.N.Y. Jan. 31, 2018), Report and Recommendation adopted by 2018 WL 1135652

(E.D.N.Y. Feb. 28, 2018). Allegations that an employer failed to provide these written pay stubs

suffice to establish the employer's liability, entitling the employee to damages. Piedra, 2018 WL

1136039, at *14-15. Plaintiff's allegation in the SAC that "defendants did not provide…a correct

wage statement along with each wage payment as required under NYLL § 195(3)," SAC ¶¶ 38,

48, is sufficient in this case. The allegation is further supported by deceased defendant Yifudi

Lin's deposition testimony that defendants did not provide plaintiff pay stubs when he was paid.

Yifudi Lin Dep. 76:2-5.


**E. The Applicable Statute of Limitations Period**

      The statute of limitations for a FLSA claim is two years but extends to three years when a

plaintiff demonstrates that his employer's violation was willful. See Parada v. Banco Indus. De

Venezuela, C.A., 753 F.3d 62, 70 (2d Cir. 2014) (quoting 29 U.S.C. § 255(a)); see also Nam,

2021 WL 878743, at *3 (quoting Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir.

2011)). "[A] new cause of action accrues [under the FLSA] with each payday following an

allegedly unlawful pay period." Castellanos v. Raymours Furniture Company, Inc., 291 F. Supp.

3d 294, 299 (E.D.N.Y. 2018) (alterations in original) (quoting Chaohui Tang v. Wing Keung

Enters., Inc., 210 F. Supp. 3d 376, 394 (E.D.N.Y. 2016). This means that "an employee can

recover damages for pay periods as far back as the statute of limitations reaches." Id. at 299-300.

When a defendant is sued for FLSA violations and then defaults, the violations are considered

willful. Nam, 2021 WL 878743, at *3 (citing Leon v. Zita Chen, No. 16-CV-480, 2017 WL

1184149, at * 4 (E.D.N.Y. Mar. 29, 2017)). Here, plaintiff's allegations that defendants acted

"knowingly and willfully," Compl. ¶ 16, and defendants' default both demonstrate willfulness, allowing for a three-year statute of limitations, Id. at *3. This case was filed on May 7, 2018 and so any recovery under FLSA may only be based on violations on or after May 7, 2015.

The statute of limitations under the NYLL is six years. N.Y. Lab. Law. §§ 198(3), 663(3); see also Inclan v. New York Hosp. Grp., 95 F. Supp. 3d 490, 503 n.10 (S.D.N.Y. 2015). Therefore, plaintiff may only recover for NYLL violations which occurred on or after May 7, 2012 – six years before this case was filed. See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 498 n.7 (S.D.N.Y. 2017).

## IV. Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc, 183 F.3d 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court, however, does not need to hold a hearing, as "detailed affidavits and documentary evidence" may be sufficient. Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

Plaintiff requests the following damages: the difference between his actual pay and the minimum wage rate during the periods in which he worked for plaintiff; unpaid overtime compensation; unpaid spread of hours pay; liquidated damages; statutory damages for wage statement violations; and prejudgment interest. Pl.'s Mot. 10-16. In support of his damages request, plaintiff relies on his deposition transcript, defendant Yifudi Lin's deposition transcript, and his counsel's affirmation. Id. at 10. Plaintiff also provides a document titled "Wong Good Hand Pull Noodles Damages Calculations," ECF No. 74-7, which purports to explain his claim of damages.[14] As the record makes clear, even when defendants participated in this litigation, they were unable to produce payment records, many of which they claimed were destroyed. Yifudi Lin Dep. 62:13-63:15, 66:24-67:3, 71:6-10, 73:13-24, 82:23-83-7, 88:13-22.

In the default context, plaintiff bears the burden of proving the damages requested "to a 'reasonable certainty.'" Martinez, 2017 WL 5033650, at *11 (quoting Gunawan, 897 F. Supp. 2d at 83). In a FLSA action for unpaid wages, "a plaintiff can meet this burden 'through estimates based on his own recollection.'" Jemine v. Dennis, 901 F. Supp.2d 365, 376 (E.D.N.Y. 2012) (quoting Kuebel v. Black & Decker, Inc., 643 F.3d 352, 362 (2d Cir. 2011)). When an employer fails to produce records, a Court may award damages to the employee based upon his recollections even if the result is only approximate. Id. (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946)).

Although plaintiff brings claims under both FLSA and the NYLL, he may only recover damages under one statute and may not be awarded a "double recovery." Martinez, 2017 WL 5033650, at *11 (quoting Gonzalez v. Gan Israel Pre-Sch., No. 12-CV-6304(MKB), 2014 WL

---

[14] The Court notes that the damages calculation includes unpaid wage damages for the period May 7, 2012 to December 30, 2013. However, the Court's summary judgment decision dismissed plaintiff's unpaid minimum wage claim for the period before December 31, 2013. Summ. J. Op. & Order 23.

1011070, at *11 (E.D.N.Y. Mar. 14, 2014)). Courts award damages under whichever statute allows for the larger recovery. Id. (citing Gonzalez, 2014 WL 1011070, at *11).

At the outset, the Court notes that it has reviewed plaintiff's damages calculation and finds it of little value. Despite the fact that the Court granted summary judgment on the issue of liability for unpaid minimum wages prior to December 31, 2013, Summ. J. Op. & Order 23, plaintiff still includes calculations for this time period without specifying the category of damages to which they refer. Although plaintiff requests back wages, the damages calculations do not contain any explanation regarding unpaid minimum wage. In any event, as discussed below, plaintiff is not entitled to recovery of damages for unpaid minimum wage. The calculations also fail to account for the change in plaintiff's hours in the middle of 2015, an issue which the Court addresses below.

### A. Plaintiff is Not Entitled to Minimum Wage Damages

FLSA provides that an employer who fails to pay minimum wage or overtime compensation shall be liable to an employee for the unpaid amount. 29 U.S.C § 216(b). NYLL permits an employee to recover "the amount of any such underpayments" when an employer fails to pay minimum wage. N.Y. LABOR LAW § 663(1). At all relevant times, the minimum wage rate was more generous under the NYLL than under FLSA. Compare 29 U.S.C. § 206(a) with N.Y. LABOR LAW § 652(1) (providing that if the wage under FLSA is greater than the wage stated in the New York statute then the FLSA minimum wage prevails). For this reason, the Court considers only plaintiff's minimum wage damages under the NYLL. See Martinez, 2017 WL 5033650, at *13.

The Court must first determine plaintiff's "regular rate of pay" before calculating an appropriate damage award. Id. at *14. The "regular rate of pay" for an employee in the hospitality industry, which includes restaurants, is determined based upon a formula set forth by regulation. 12 N.Y.C.R.R. § 146-3.5(b); see also Canaveral v. Midtown Diner NYC, Inc., No. 19 Civ. 635(GBD)(JLC), 2019 WL 4195194, at *4 n.3 (S.D.N.Y. Sept. 5, 2019); Martinez, 2017 WL 5033650, at *14. "Regular rate of pay" is determined "by dividing the employee's total weekly earnings…by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b).

Plaintiff's regular rate of pay for the entire period that he worked for defendants was $17.31 per hour. The Court calculated this rate by first determining plaintiff's weekly rate of pay, $692.30. This was done by multiplying plaintiff's monthly pay of $3,000, SAC ¶ 30; Qu Aff. ¶ 10; Gao Dep. 51:6-10, by the number of months in the year, twelve, and dividing the result by the number of weeks in the year, 52, to arrive at $692.30 per week.[15] Plaintiff's regular rate of pay can then be determined, through use of the formula in 12 N.Y.C.R.R. § 146-3.5(b). The weekly rate of pay $692.30 divided by 40 hours is $17.31.[16] Plaintiff was never employed less

---

[15] $3,000 (monthly pay) x 12 (months in the year) = $36,000. $36,000 (yearly pay)/52 (weeks in a year) = $692.30.
[16] At summary judgment, the Court calculated Mr. Gao's regular rate of pay to be $7.32. Summ. J. Op. & Order 19. This was done by dividing plaintiff's weekly pay of $692.30 by the 94.5 hours he alleges he worked a week, rather than 40 hours. The Court noted that there was an issue of fact regarding the correct calculation of plaintiff's regular rate of pay and that plaintiff's counsel's own calculations at one point stated that plaintiff's regular rate of pay was $17.31. Id. at 20 n.8. For these reasons, at the summary judgment stage, where the Court construed the facts in the light most favorable to the nonmoving party, the court declined to grant summary judgment as to plaintiff's minimum wage claims. Id. In any event, at this state of the litigation, the calculation must be made according to New York law and the formula contained in 12 N.Y.C.R.R. § 146-3.5(b) because the wage rates have always been higher under the NYLL than under FLSA. See Martinez, 2017 5033650, at *14 (calculating minimum wage damages according to NYLL because New York's minimum wage rates exceed FLSA's and finding that plaintiff's regular rate of pay exceeded the minimum wage). This is made clear by the fact that if plaintiff's hourly rate was calculated by dividing the weekly rate of $692.30 by the total hours worked, the resulting hourly rate would always be higher than FLSA $7.25 minimum wage rate. See Summ. J. Op. & Order 19-20 (calculating plaintiff's hourly rate using the total number of hours he allegedly worked a week and reaching results of $7.32 for 2010 through 2015 and $8.44 for 2015 through 2018, both of which are higher than $7.25). Further, plaintiff's own damages calculation acknowledges that the correct regular rate of pay is 17.31. ECF No. 74-4.

than 40 hours per week, see SAC ¶¶ 28, 40, so $17.31 was his regular hourly rate during the

entirety of his employment. This figure is greater than the minimum wage in New York at any

time during the relevant period. Therefore, plaintiff is not entitled to the recovery of damages for

defendants' failure to pay minimum wage. The allegations in plaintiff's complaint may have

been sufficient to establish defendants' liability, but when plaintiff's wages are calculated

pursuant to the formula cited above, plaintiff is not entitled to any minimum wage damages. See

Martinez, 2017 WL 5033650, at *14.


**B. Overtime Compensation**

The FLSA and New York law both require overtime compensation of one and one-half

times an employee's regular rate, see 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4, however,

recovery is permitted only once. Nam, 2021 WL 878743, at *7; Piedra, 2018 WL 1136039, at

*10. Courts may award damages under whichever statute permits the greater recovery, however,

as explained below, both statutes provide the same result here. Nam, 2021 WL 878743, at *7.

Federal law provides that:

> [T]he regular hourly rate of pay, on which time and a half must be paid, is computed by
> dividing the [weekly] salary by the number of hours which the salary is intended to
> compensate…When the salary covers a period longer than a workweek, such as a month,
> it must be reduced to its workweek equivalent. A monthly salary is subject to translation
> to its equivalent weekly wage by multiplying by 12 (the number of months) and diving
> by 52 (the number of weeks).

29 C.F.R. § 778.113(a)-(b). Absent an agreement between the parties, an employee's weekly

salary is presumed to only cover the first forty hours of the workweek. Berrios v. Nicholas Zito

Racing Stable, Inc., 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting Giles v. City of New

York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)). In cases of default, this presumption is unlikely

to be rebutted. See Nam, 2021 WL 878743, at *7 (citing Valdez v. H & S Rest. Operations, Inc.,

No. 14-CV-4701, 2016 WL 3079028, at *5 (E.D.N.Y. Mar. 29, 2016)); Bosoro v. Am. Comprehensive Healthcare Medical Grp, P.C., No. 14-CV-1099(ENV)(SG), 2015WL5676679, at *6 (E.D.N.Y. Aug. 31, 2015) (quoting Giles, 41 F. Supp. 2d at 317) Report and Recommendation adopted by 2015 WL 5686481 (Sept. 25, 2015).

Applying the formula and guidance described above, plaintiff's weekly salary, $692.30, is divided by 40 hours per week, yielding a regular hourly rate of pay of $17.31. This figure is then multiplied by 1.5 to calculate $25.97 as plaintiff's overtime hourly rate.

Similarly, and as already discussed, under New York law, the weekly rate of pay is divided by the lesser of forty hours or the hours actually worked. 12 N.Y.C.R.R. § 146-3.5(b). This calculation also yields a regular rate of pay of $17.31 and a one and one-half overtime rate of $25.97. Plaintiff is entitled to receive his overtime rate of pay for every hour per week worked in excess of 40 hours. See 29 U.S.C. 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. The Court will apply and recommend damages under the NYLL which has a longer, six-year statute of limitations period. N.Y. Lab. Law §§ 198(3), 663.

Before calculating a proper award of overtime compensation, the Court must determine how many overtime hours per week plaintiff worked and for how long. Plaintiff's SAC states that he worked seven days a week and 94.5 hours each week from the start of his employment through June 2015. SAC ¶¶ 27-28. However, his motion papers state that he worked 94.5 hours through December 30, 2015. Pl.'s Mot. 12. In support of this assertion, plaintiff's memorandum of law cites plaintiff's counsel's affirmation which in turn cites portions of plaintiff's deposition testimony. Id. Counsel's affirmation states: "Plaintiff worked seven days per week between May 7, 2012 to 2015. During this period, Plaintiff's work schedule ran from 10:30 a.m. to 12:00 a.m.

Plaintiff worked 6 days and a half between 2016 to March 18, 2018….” Qu Aff. ¶¶ 8-9.

Plaintiff's deposition addresses his work schedule during this period:

> Q: I want to talk about your hours now while you worked at Wong Good Hand Pull
>
> Noodles. What were your hours?
>
> A: From the very beginning from 2010 to 2015 my work hours are 10:30 a.m. to 12:00
>
> a.m.
>
> Q: Did your hours change after 2015?
>
> A: After 2015 it was 10:30 a.m. to 11:00 p.m.

Gao Dep. 43:8-14.

At another point the transcript states:

> Q: Now, you said your schedule changed **in** 2015, did the days you worked change as
>
> well?
>
> A: Yes.
>
> Q: How many days did you work after 2015?
>
> A: Six and a half days.
>
> Q: Please tell me which six whole days and tell me your hours for the half day?
>
> A: Every Friday 5:30 p.m. I take off.
>
> Q: And then the other six days you work the 10:30 to 11?
>
> A: Yes.

Id. 74:10-24 (emphasis added).

Counsel's affirmation and plaintiff's deposition are both ambiguous about exactly when

his weekly work hours decreased below 94.5 hours. Neither document specifically states that

plaintiff worked 94.5 hours a week through December 31, 2015. In response to defendants'

counsel's questioning, plaintiff acknowledges that his hours changed in 2015, id. 74:10-13, but at another point, plaintiff suggests his hours were altered after 2015, 43:8-14. This conflicts with the clearly stated allegations in the SAC. Further still, plaintiff's letter response to defendants' request for a pre-motion conference, in discussing an anticipated summary judgment motion on the issue of minimum wage, states:

> During the employment period from June 2010 to June 2015 in which Plaintiff worked 7 days per week, ie., 94.5 hours per week, Plaintiff's hourly rate was about $7.32 (692.31/94.5)…During the employment period from July 2015 to March 19, 2018, in which Plaintiff worked 6 days per week, i.e., 80 hours per week, Plaintiff's hourly rate was about $8.65…Therefore, Plaintiff was not paid the minimum wage rate for the year of 2015 (July to December)….

Pl.'s Ltr. 2; ECF No. 33. This letter was filed on April 10, 2019, a little over a month after plaintiff's deposition. See ECF No. 33, Gao Dep. 1:12-13. Plaintiff's opposition to defendants' motion for summary judgment further describes plaintiff's deposition and states: "Gao alleged that his daily schedule runs from 10:30 a.m. to 12:00 a.m. from 2010 to 2015; and 10:30 a.m. to 11 p.m. from 2015 until the end of his employment. Pl.'s Opp'n to Defs.' Mot. for Summ. J. 1, ECF No. 42 (citing Gao Dep. 43:8-14). A document titled "Plaintiff's damages calculation," filed on June 21, 2019 during the summary judgment briefing, shows a change in plaintiff's hours after June 2015. Pls.' Damages Calculation, ECF No. 41-10. The Court is left to determine the correct time period in which plaintiff worked 94.5 hours. Is it until June 2015 or December 31, 2015? The record is anything but clear. This discrepancy is the difference between an award of overtime compensation for 54.5 hours a week (94.5 hours – 40 hours) for the entirety of 2015 or for only half of that year.

The burden is on plaintiff "to submit 'sufficient evidence from which…the amount of an award can be reasonably inferred.'" Jemine, 901 F. Supp. 2d at 376 (quoting Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997)). Here, given the discrepancy in

plaintiff's positions, the Court can only reasonably infer and properly calculate an award of overtime compensation based on plaintiff's work for 94.5 hours a week through June 2015.

Plaintiff may only be awarded overtime compensation for the period after May 7, 2012 because the NYLL has a six-year statute of limitations, N.Y. LAB. LAW. § 663(3), and this case was filed on May 7, 2018. The period between May 7, 2012 and June 30, 2015 is 1149 days or approximately 164 weeks. Plaintiff worked 54.5 hours of overtime each week during that time for a total of 8,938 overtime hours. Multiplying plaintiff's regular overtime rate of $25.97 by 8,938 overtime hours, yields a damage award of $232,119.86 in overtime compensation for the period May 7, 2012 through June 30, 2015.

The Court must now calculate the overtime award owed to plaintiff for the period of July 1, 2015 through the date he was terminated, March 19, 2018. The record is inconsistent about how many hours plaintiff worked each week during this time period. The SAC says that during this time period plaintiff worked 12.5 hours per day for six days each week and then on the remaining day of the week, Friday, he worked "from 12:00 pm – 6:00 pm, for five (sic) hours." SAC ¶ 39. The SAC then concludes that plaintiff worked "around 80 hours per week. Id. ¶ 41. If plaintiff worked from 12:00 p.m. to 6:00 p.m. that is a period of six hours, not five. That would bring plaintiff's total hours per week to 81 hours. As previously reviewed, plaintiff's motion papers do not account for the change in hours in the middle of the year and also suggest that plaintiff worked 82 hours per week rather than 80 or 81. Pl.'s Mot. 11 n.3. Further, this position contradicts plaintiff's earlier filings in opposition to defendants' motion for summary judgment as previously cited. Pl.'s Ltr. 2, ECF No. 33; Pl.'s Opp'n to Defs.' Mot. for Summ. J. 1, (citing Gao Dep. 43:8-14). The Court can only be confident that plaintiff worked at least 81 hours per

week, or 41 overtime hours per week during this time period. The Court will calculate the overtime compensation due for the period of July 1, 2015 through March 19, 2018 accordingly.

The period of July 1, 2015 through March 19, 2018 is 992 days or approximately 142 weeks. Calculating the total overtime hours worked during this period requires the Court to multiply 142 weeks by 41, which yields 5,822 overtime hours. The overtime compensation amount for this period can be determined by multiplying 5,822 by plaintiff's overtime rate of $25.97. The result is $151,197.34.

Accordingly, I recommend plaintiff should be awarded $383,317.20 ($151,197.34 + $232,119.86) in total overtime compensation damages.


**C. Spread of Hours**

Plaintiff also seeks damages for defendants' failure to provide spread of hours compensation, or one additional hour of pay, for each day he worked over ten hours. See 12 N.Y.C.R.R. 146-1.6(a). This "compensation is calculated at the applicable minimum wage 'regardless of a given employee's regular rate of pay.'" Martinez, 2017 WL 5033650 at *17 (12 N.Y.C.R.R. 146-1.6(d)).

Plaintiff worked over ten hours a day for seven days a week through June 2015. SAC ¶ 27. From July 2015 through March 19, 2018, plaintiff worked over ten hours a day, six days a week. Id. ¶ 39. The minimum wage rate in New York changed multiple times during the course of plaintiff's employment, see N.Y. LAB. LAW § 652, and so the Court must calculate the spread of hours pay owed to plaintiff separately for different periods to account for this change. The total amount owed for each year is determined by multiplying the number of days a year that

plaintiff worked over ten hours by the applicable minimum wage rate. The following table reflects the Court's calculations:

| Unpaid Spread of Hours Compensation | | | |
|---|---|---|---|
| Dates | Applicable NYLL Minimum Wage | Days Worked Over 10 Hours[17] | Total Spread of Hours Compensation Due |
| 5/7/2012-12/30/2013 | $7.25[18] | 602 | $4,364.50 |
| 12/31/2013-12/30/2014 | $8.00 | 365 | $2,920 |
| 12/31/2014-6/30/2015[19] | $8.75 | 182 | $1,592.50 |
| 7/1/2015-12/30/2015 | $8.75 | 157 | $1,373.75 |
| 12/31/2015-12/30/2016 | $9.00 | 312 | $2,808 |
| 12/31/2016-12/30/2017 | $10.50 | 365 | $3,286.50 |
| 12/31/2017-3/19/2018 | $12.00 | 68 | $816 |
| Total Spread of Hours Pay Due | | | $16,345.25 |

Accordingly, the Court should award plaintiff $16,345.25 in spread of hours pay.

**D. Liquidated Damages**

Under both FLSA and the NYLL, a prevailing plaintiff may recover liquidated damages equal to one hundred percent of the amount awarded in back pay. See 29 U.S.C. § 216(b); N.Y. LAB. LAW § 663(1). The NYLL does permit an employer to avoid payment of liquidated damages by demonstrating "a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. LAB. LAW § 663(1); see also Nam, 2021 WL 878743, at *8. Here, by their default, defendants have failed to show the good faith basis required to avoid payment of liquidated damages. See Nam, 2021 WL 878743, at *8; Lopic, 2017 WL 10845064, at *8; Martinez, 2017 WL 5033650, at *22 ("Defendants have defaulted and therefore have not

---

[17] Starting in July 2015, Fridays are not included in the relevant time period.
[18] The minimum wage under FLSA was greater than the New York state minimum wage until December 31, 2013 when New York's minimum wage became $8.00. Compare 29 U.S.C. 206(a) with N.Y. Lab. Law § 652(1).
[19] Plaintiff alleges he worked seven days a week through June 2015. SAC ¶ 27.

met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiffs….").

Although liquidated damages are available under both FLSA and the NYLL, Courts will only permit the award of damages under one statute. Lopic, 2017 WL 10845064, at *9. This is because the liquidated damages provisions of both statutes "compensate 'the exact same harm'" and Courts believe one award will serve the purpose of deterring future violations. Id. (quoting Li Ping Fu v. Pop Art. Intern. Inc., No. 10 Civ. 8562(DLC)(AJP), 2011 WL 4552436, at *5 (S.D.N.Y. Sept. 19, 2011) Report and Recommendation adopted by 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); see also Martinez, 2017 WL 5033650 at *23. The Second Circuit has affirmed the denial of duplicate liquidated damages awards. Lopic, 2017 WL 10845064, at *9 (citing Chowdhury v. Hamza Express Food Corp., 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary order)).

Accordingly, I recommend that the Court should award liquidated damages under the NYLL in the amount of $399,662.45. This amount is equal to $383,317.20 (unpaid overtime compensation) plus $16,345.25 (unpaid spread of hours compensation). See Martinez, 2017 WL 5033650, at *23 ("The NYLL…allows [plaintiffs]…to recover liquidated damages for all wage claims…brought under the NYLL, including the spread of hours wages owed to plaintiffs….).

**E. Failure to Provide Pay Stubs**

Defendants failed to provide plaintiff with pay stubs and wage statements as described in N.Y. LAB. LAW § 195(3). New York law provides that employees who are not provided with these statements "shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five

thousand dollars…." Id. § 198(1-d). This means that after twenty workdays an employee is entitled to the maximum statutory damages amount, $5,000.[20]

The record is clear that plaintiff worked more than twenty days without receiving a wage statement. He is therefore entitled to the maximum statutory amount. Accordingly, I recommend that plaintiff should be awarded $5,000 in statutory damages under N.Y. LAB. LAW. § 198 (1-d).

## F. Prejudgment Interest

Plaintiff seeks prejudgment interest on damages awarded under his state law claims. Pl.'s Mot. 15. New York law provides that, in addition to unpaid wages and liquidated damages, "[i]n any action instituted in the courts upon a wage claim by an employee…the court shall allow such employee to recover…prejudgment interest as required by the civil practice law and rules" N.Y. LAB. LAW. § 198(1-a). Civil Practice Law and Rules ("C.P.L.R.") §§ 5001-04 govern awards of interest in actions maintained under New York law. Prejudgment interest is available only on compensatory damages awarded under the NYLL, not on any damages awarded under FLSA, liquidated damages amounts, or statutory damages awarded for failure to provide wage statements. Lopic, 2017 WL 10845064, at *10 (citing Andrade v. 168 First Ave. Rest. Ltd., No 14 Civ. 8268 (JPO)(AJP), 2016 WL 3141567, at *10 (S.D.N.Y. June 3, 2016), Report and Recommendation adopted by 2016 WL 3948101 (S.D.N.Y. July 19, 2016)); Martinez, 2017 WL 5033650 at *24 (citing N.Y. LAB. LAW. § 195(1)-(3)).

The C.P.L.R. provides that when the damages awarded accrued over a period of time, "interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." C.P.L.R. § 5001(b). In unpaid wage

---

[20] The maximum statutory fine of $5,000 divided by the daily fine of $250 equals twenty.

actions where damages accrue over time, courts calculate prejudgment interest by first determining the midpoint of the work period for which damages are awarded. See Gil v. Frantzis, No. 17-CV-1520(ARR)(SJB), 2018 WL 4522094, at *13 (E.D.NY. Aug. 17, 2018) (citing Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364, at *11 (E.D.N.Y. June 9, 2015) Report and Recommendation adopted as modified by 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018)); Baltierra v. Advantage Pest Control Co., No. 14 Civ. 5917(AJP), 2015 WL 5474093, at *12 (S.D.N.Y. Sept. 18, 2015); Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 322 (S.D.N.Y. 2014). Courts then use the 9% interest rate provided in C.P.L.R. § 5004 to calculate prejudgment interest. Gil, 2018 WL 4522094, at *13.

Although plaintiff's damages calculations propose a prejudgment interest award amount and acknowledge that interest is calculated based upon the midpoint of plaintiff's employment, see ECF No. 74-7, at 4 n.2, his calculations differ slightly from the Court's calculations. This is due to the choice of a different midpoint of plaintiff's employment and the fact that his calculations extend only through the date the Clerk of Court noted defendants' default, although plaintiff requests prejudgment interest through the entry of final judgment. See Qu Aff. ¶ 43. The earliest date for which damages will be awarded is May 7, 2012 and plaintiff was fired on March 19, 2018. SAC ¶ 39. The Court therefore determines the midpoint of plaintiff's employment to be April 14, 2015, halfway between May 7, 2012 and March 19, 2018. The Court then calculates an award of prejudgment interest by first determining the daily accumulation of interest and multiplying by the total number of days between April 14, 2015 and the date of this Report. Using the 9% interest rate provided by the C.P.L.R the daily accumulation of interest on plaintiff's total compensation award of $399,662.45 is $98.55 ($399,662.45 x .09/365). There are 2208 days between April 14, 2015 and the date of this Report. As a result, the prejudgment

interest accumulated thus far is $217,598.40 (2208 x $98.55). This amount will increase by $98.55 each day until final judgment is entered.

Accordingly, I recommend that the Court should award plaintiff $217,598.40 in prejudgment interest plus an additional $98.55 for each day between the date of this Report and the entry of final judgment.

## G. Post-Judgment Interest

A portion of plaintiff's memorandum of law states that plaintiff also seeks post-judgment interest. Although plaintiff's motion papers do not substantively address this claim, he is entitled to post-judgment interest as a matter of right. 28 U.S.C. § 1961; see also, Nam, 2021 WL 878743, at *11 (citing Tacuri v. Nithin Constr. Co., No. 14 Civ. 2908 (CBA)(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015)); Guaman v. Krill Contracting, Inc., No. 2015 WL 3620364, at *11 (E.D.N.Y. June 9, 2015) (citing Holness v. Nat'l Mobile Television, Inc., No. 09-CV-2601(KAM)(RML), 2012 WL 1744847, at *7 (E.D.N.Y. Feb. 14, 2012) Report and Recommendation adopted as modified by 2012 WL 1744744 (E.D.N.Y. May 15, 2012)). Therefore, I recommend that plaintiff should be awarded post-judgment interest at the rate set forth under 28 U.S.C. § 1961.

## V. Attorney's Fees and Costs

Plaintiff seeks an award of attorney's fees and costs in the amounts of $37,300.00 and $2,771.19 respectively. Pl.'s Mot. 19. In support of his request, plaintiff provides his counsel's

affirmation, Qu Aff., counsel's contemporaneous billing records,[21] and expense receipts, ECF Nos. 74-8, 76.

Plaintiff is entitled to recovery of attorney's fees and costs under both FLSA and NYLL. 29 U.S.C. § 216(b); N.Y. LAB. LAW § 198(1-a). In evaluating requests for attorney's fees, Courts seek to determine the "presumptively reasonable fee." See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008) [hereinafter Arbor Hill]. The objective is to determine what a reasonable paying client would pay for the attorney's services. Id. at 184, 191. The presumptively reasonable fee is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing Arbor Hill, 522 F.3d at 183). Therefore, Courts separately consider the reasonableness of the attorney's requested hourly fee and the number of hours expended on the matter. See, e.g., Nam, 2021 WL 878743, at *10-11; Lopic, 2017 WL 10845064, at *11-12; Martinez, 2017 WL 5033650, at *27-29. Attorney's fees applications must be supported by contemporaneous records which "should specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) [hereinafter Carey].

**A. Reasonable Hourly Rate**

Courts should rely on the prevailing rates within their district when determining a reasonable hourly rate. Kewi Chen v. Anzai Asian Inc., No. 18-CV-6659(JMA)(ARL), 2020 WL 8620021, at *2 (E.D.N.Y. Nov. 30, 2020) (quoting Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d

---

[21] Contemporaneous records reflect counsel's billable hours on this case for the period between January 21, 2019 and February 26, 2021. ECF No. 74-8. However, the Court notes that this matter was filed on May 7, 2018 and plaintiff's counsel has represented plaintiff throughout this case.

131, 155 (E.D.N.Y. 2013)). Recent decisions within the Eastern District of New York approved hourly rates of $300 to $450 for partners, $200 to $300 for senior associates, and $100-$200 for junior associates, and $70 to $100 for support staff. Nam, 2021 WL 878743, at *10 (citing Martinez v. New 168 Supermarket LLC, No. 19-CV-4526(CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020); Kewi Chen, 2020 WL 8620021, at *2 (quoting Payamps v. M&M Convenience Deli & Grocery Corp., No. 16-CV-4895(LDH)(SJB), 2019 WL 8381264, at *15 (E.D.N.Y. Dec. 9, 2019)); Yu Wei Cao v. Miyama, Inc., No. 15-CV-266(JS)(ARL), 2020 WL 4808624, *2 (E.D.N.Y. Aug. 18, 2020) (quoting Escobar v. Del Monaco Bros. Indus. Inc., No. 14-CV-3091(ADS)(SIL), 2017 WL 358823, at *2 (E.D.N.Y. Aug. 3, 2017) Report and Recommendation adopted by 2017 WL 3588638 (E.D.N.Y. Aug. 18, 2017)).

Several attorneys from Hang & Associates, PLLC, the law firm representing plaintiff, worked on this matter. Qu Aff. ¶¶ 48-58. Plaintiff's request for attorney's fees is based on the following hourly rates: $350 for the firm's principal attorney Jian Hang, id. ¶ 51; $300 for senior associate Ge Qu, id. ¶ 55; $200 for first-year associate Xiaoxi Liu, id. ¶ 56; $150 for law clerk Anqi Yu, id. ¶ 57; and $150 for law clerk Ge Yan, id. ¶ 58. Counsel's affirmation states that Mr. Hang has practiced law for approximately ten years, focuses exclusively on employment matters, and has handled approximately 50 lawsuits in federal court. Id. ¶ 48-49. Ge Qu graduated from law school in 2015, received an LLM in 2017, has practiced wage and hour law for approximately four years, and has handled over 30 FLSA cases in the Eastern District. Id. ¶ 53-54. The Court was not provided with additional information about the experience of Xiaoxi Liu, Anqi Yu, or Ge Yan.

Mr. Hang's $350 hourly rate falls within the range regularly approved for law firm partners and has previously been approved by other Courts reviewing his billing records. See

e.g., Kewi Chen, 2020 WL 8620021, at *3; Yu Wei Cao, 2020 WL 4808624, *2; Zhang v. Red Mountain Noodle House, Inc., No. 15-CV-628(SJ)(RER), 2016 WL 4124304, at *6 (E.D.N.Y. July 5, 2016) Report and Recommendation adopted by 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016). However, the billing records provided by plaintiff's counsel in this matter do not attribute any of the work done in this matter to Mr. Hang. See ECF No 74-8. Therefore, the Court declines to address the issue of Mr. Hang's reasonable hourly rate. Ge Qu's $300 hourly rate, although at the high end of the acceptable range for senior associates, is reasonable. Therefore, the Court should approve a $300 hourly rate for Ge Qu.

The only information provided for Xiaoxi Liu is that she "was a first-year associate of H&A at all relevant times to this action." Qu Aff. ¶ 56. On this basis alone, plaintiff "request[s] a $200 hourly rate for her." Id. Another Court in this District recently rejected a request of $275 per hour for Ms. Liu because "[p]laintiff provided no information about Xiaoxi Liu, including Liu's experience level." Kewi Chen, 2020 WL 8620021, at *3. On that basis the Court reduced her hourly fee to $100. Id. For this reason, the Court should likewise find a $100 hourly fee appropriate for Ms. Liu. See Ming v. Shorty's Seafood Corp., No. 15-CV-7295(RJD)(ST), 2017 WL 5054401, at *12 (E.D.N.Y. Sept. 6, 2017) (reducing the fee of a junior associate of Hang & Associates to $100 when no information was provided to support a higher fee request) Report and Recommendation adopted by 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017).

Plaintiff requests a $150 hourly rate for Anqi Yu and Ge Yan who are both "law clerk[s] employed by H&A." Qu Aff. ¶¶ 57-58. No other information is provided by plaintiff about these two individuals. The title "law clerk" is somewhat ambiguous and on its face provides little guidance about the background and experience of the person holding the position. The Court is aware that some law firms give the title of "law clerk" to law school graduates who have not yet

been admitted to the practice of law. See Douyon v. NY Medical Health Care, P.C., 49 F. Supp. 3d 328, 347 (E.D.N.Y. 2014) (referring to a law school graduate who was awaiting admission to the bar as a law clerk). In this district, fees for law clerks are awarded at the same rates as legal assistants and support staff. See e.g., Cortes v. Juqila Mexican Cuisine Corp., No. 17-CV-3942(RER), 2021 WL 1193144, at *2 (E.D.N.Y. Mar. 29, 2021) (citing LG Capital Funding, LLC v. 5Barz Intern., Inc., No, 16-CV-2752(KAM)(JO) 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019)). In this light, plaintiff's request of $150 an hour for Ms. Yu and Ms. Yan is unreasonable because the accepted hourly rate in this District for law clerks is between $70 and $100. LG Capital Funding, LLC, 2019 WL 3082478, at *2 (collecting cases). Therefore, the Court should reduce the hourly rate awarded for Ms. Yu and Ms. Yan to $85 an hour. See id. (reducing the hourly rate of an unadmitted law clerk from $250 an hour to $85 an hour).

Accordingly, the Court should find the following hourly rates reasonable for the Hang & Associates personnel who worked on this case: $300 for Ge Qu; $100 for Ms. Liu; $85 for Ms. Yu and Ms. Yan.


**B. Reasonable Number of Hours**

In evaluating the number of hours spent working on a case, the Court considers counsel's contemporaneous records, the Court's own experience with the case, and the Court's general experience with similar types of litigation. See Ni v. Bat-Yam Food Servs. Inc., No. 13-CV-7274(ALC)(JCF), 2016 WL 369681, at *7 (S.D.N.Y. Jan. 27, 2016) (first quoting Carey, 711 F.2d at 1148; and then quoting Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)). The Court must determine if a reasonable attorney would have "engaged in similar time expenditures." Id. (internal quotation marks omitted) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d. Cir. 1992)).

The Court should find the number of hours expended by plaintiff's counsel in litigating this matter, as documented in counsel's contemporaneous records, to be reasonable. This case was filed almost three years ago and was actively litigated during much of that time. Counsel engaged in extensive discovery, including multiple depositions, and the case survived summary judgment. After defendants' default, counsel first requested leave to move for entry of default and then moved for a default judgment. In light of the procedural history of this case and the labor invested by plaintiff's counsel, the Court should find 151.80 hours of plaintiff's attorney's work to be reasonable. Id. at 7-8 (finding 176.3 hours of work to be reasonable in a FLSA case which lasted over two years and involved litigation of a summary judgment motion).

The following chart represents the hours expended by each member of Hang & Associates who worked on this matter, the recommended hourly rates discussed above, and the total fee the Court should award to plaintiff's attorney:

| ATTORNEY'S FEES | | | |
|---|---|---|---|
| **Attorney/Personnel** | **Number of Hours** | **Hourly Rate** | **Total** |
| Ge Qu | 82.9 | $300 | $24,870 |
| Xiaoxi Liu | 43.4 | $100 | $4,340 |
| Ge Yan | 5.5 | $85 | $467.50 |
| Anqi Yu | 20 | $85 | $1,700 |
| **Total** | 151.80 | | $31,377.50 |

Accordingly, I recommend that the Court should award plaintiff $31,377.50 in attorney's fees.

## C. Costs

Plaintiff requests $2,771.19 in costs – including the case filing fee, transcription fees, interpretation fees, and service fees – and provides receipts for some of his expenses. ECF Nos. 74-8, 76-1. Although plaintiff's request includes $9.60 for a "transcript fee," $42 for a "court

transcript," and $400 for the case filing fee, he does not provide invoices or receipts for these expenses. Although the Court can take notice of the filing fee in this District, it cannot approve costs without sufficient documentation. See Martinez, 2017 WL 5033650, at *29 (citing Joe Hand Promotions v. Elmore, No. 11-CV-3761(KAM)(SMG), 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013)).

Accordingly, I recommend that the Court should award costs in the amount of $2,719.59, encompassing the filing fee and those expenses for which proper documentation was filed.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion for a default judgment should be granted. Plaintiff should be awarded $383,317.20 in unpaid overtime compensation, $16,345.25 in unpaid spread of hours pay, $399,662.45 in liquidated damages, $5,000 in wage notice damages, $217,598.40 (plus an additional $98.55 for each day between the date of this Report and the entry of final judgment) in prejudgment interest, $31,377.50 in attorney's fees, and $2,719.59 in costs for a total award of $1,056,020.39. Plaintiff should also be awarded post-judgment interest at the rate set forth under 28 U.S.C. § 1961.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d

Cir. 2002); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>Thomas v.</u>

<u>Arn</u>, 474 U.S. 140 (1985).

SO ORDERED.

                               /S/

                         LOIS BLOOM
                         United States Magistrate Judge

Dated: April 30, 2021
       Brooklyn, New York